**SOCIETY CREATED TO REDUCE URBAN BLIGHT, Honorable David Cohen, Mary Cawley Tracy, Stadium Community Council, Joseph Meloni,**

v.

**ZONING BOARD OF ADJUSTMENT OF THE CITY OF PHILADELPHIA and City of Philadelphia Law Department.**

**Appeal of Albert M. Tantala and Keystone Outdoor Advertising Company,**

**Hon. David COHEN,**

v.

**Albert M. TANTALA PE, Keystone Outdoor Sign Co. Inc., City of Philadelphia Law Department, Zoning Board of Adjustments, Carl S. Primavera, Keystone Outdoor Advertising Co., Inc., Keystone Inner City, Inc.**

**Appeal of Albert M. Tantala and Keystone, Outdoor Advertising Company.**

Commonwealth Court of Pennsylvania.

Argued March 6, 2001.
Decided April 10, 2001.

Carl S. Primavera, Philadelphia, for appellants.

Robert M. Jaffe, Philadelphia and Samuel C. Stretton, West Chester, for appellees.

Before SMITH, Judge, PELLEGRINI, Judge, JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Albert M. Tantala and Keystone Outdoor Advertising Company (collectively, Keystone) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court) reversing the decision of the Zoning Board of Adjustment of the City of Philadelphia (Board) granting their request for a variance to erect an outdoor advertising sign.

On July 7, 1998, Keystone applied to the Department of Licenses and Inspections (L & I) for a permit that would allow the erection of a double-faced, free standing, non-accessory, outdoor advertising sign on property located at 25 Pattison Avenue in Philadelphia, Pennsylvania. The property, which is zoned Least Restricted Industrial and permits outdoor advertising signs, is bordered by the Walt Whitman Bridge Approach to the north, Pattison Avenue to the south, a trash transfer station to the east and the Delaware Expressway to the west. The property is owned by the City of Philadelphia (City) and is used by the City's Water Department as the site of the Southeast Water Pollution Control Plant. A portion of the property is licensed by the City to the Philadelphia Authority for Industrial Development (PAID). On September 18, 1998, PAID entered into an agreement with Keystone to sub-license that same portion of property so that it could erect an outdoor advertising sign.

The sign, with a total area of 2,400 square feet, was to be located within 500

feet of two other non-accessory outdoor advertising signs and within 660 feet of the Walt Whitman Bridge. L & I denied the application because the proposed sign would not comply with the outdoor advertising requirements in Section 14–1604 of the City of Philadelphia's Zoning Code (Zoning Code) because Section 14–1604(a–1) prohibited any sign within 660 feet of the Walt Whitman Bridge and the proposed sign was going to be within 600 feet of the bridge; Section 14–1604(3) prohibited signs that were within 500 feet of any other outdoor advertising sign and the proposed sign was going to be within 500 feet of an existing outdoor advertising sign; an existing sign of equal or greater size had to be removed and Keystone had not indicated that another sign was going to be taken down; and the maximum sign area of a billboard could only be 1,500 square feet and Keystone's proposed sign was going to be 2,400 square feet. Keystone appealed that decision to the Board.

In support of its request for a variance, Keystone presented the testimony of Albert Tantala, a licensed engineer, who testified that a hardship existed due to the property's use and size and the location of the portion sub-licensed to Keystone. He stated that it was a hardship because the sewage treatment plant required a large amount of unoccupied grassy area in order to isolate it from the surrounding area, and the only other use for the sub-licensed portion was to erect additional outdoor parking space, but that would be superfluous as there were an adequate number of parking spaces already existing. Due to the height of the Walt Whitman Bridge

Approach, the portion sub-licensed to Keystone was the only area of the property suitable for an outdoor advertising sign. In opposition, the Society Created to Reduce Urban Blight (SCRUB)[1] voiced its objection to the variance as did other protestors who sent letters opposing the granting of the variance arguing that Keystone had failed to show the requisite hardship needed for the Board to grant a variance.

The Board first determined that because the Zoning Code prohibited an outdoor advertising sign to be located within 660 feet of the Walt Whitman Bridge, an existing sign of equal or greater size had to be removed, and the maximum sign area of the sign could only be 1,500 square feet, Keystone's proposed sign did not meet these requirements and a permit could only be granted if the criteria for a variance were met. It then went on to find that an unnecessary hardship had been proven due to the height of the Walt Whitman Bridge Approach because the portion sub-licensed to Keystone would be the only site on the property suitable for the proposed sign. SCRUB filed an appeal with the trial court from the Board's decision.[2]

▮ Without taking any additional evidence, the trial court reversed the Board and denied the variance because Keystone had not proven the requisite undue hardship for granting a variance stating: "The evidence presented does not establish that the property has no value as currently zoned. While the nature of the Water Pollution Control business does not require the entire parcel of land be used, the

1. SCRUB is a coalition of Philadelphia neighborhood groups, health organizations, businesses, schools and religious groups. It was first organized in 1990 in response to city council hearings on the enactment of sign ordinances in Philadelphia. Mary Tracy is the founder and president of the organization.

2. SCRUB's appeal was also filed on behalf of Mary Tracy, Councilman David Cohen, Stadium Community Council and Joseph Meloni.

City's use of the land suggests that the property does, in fact, have a meaningful use which is allowable under the current zoning designation. Therefore, requiring the property to be used in accordance with its current zoning causes no undue hardship." (Trial court opinion at p. 5.) The trial court further found that any existing hardship was self-created due to the license agreement between PAID and Keystone. This appeal by Keystone followed.[3]

Relying on *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998), Keystone contends that the trial court erred in denying the variance because it was seeking a dimensional variance and did not need to demonstrate an unnecessary hardship by showing that the property was valueless and could not be used for any other purpose. *Hertzberg* involved a women's homeless shelter located in a commercial zoning district where zoning approval was sought to convert a vacant four-story building into office space, counseling rooms and a reception area on the first floor; a dining room and kitchen on the second floor; and ten bedrooms to house 20 women on the top two floors. The building had previously been occupied by a bank and 12 apartment units but had been vacant for many years. In determining whether to grant a dimensional variance, our Supreme Court held that when considering a dimensional variance for purposes of determining unnecessary hardship, a zoning hearing board should consider multiple factors, including the financial hardship created by any work necessary to bring the property into strict compliance with the ordinance and the characteristics

of the surrounding neighborhood. In so holding, our Supreme Court held that in determining whether to grant the dimensional variance under the standard, it did not need to prove that the property was valueless without the variance and could not be used for any other permitted purpose, but rather stated that the "valueless" factor was but one way to find an unnecessary hardship and a zoning hearing board should consider multiple factors, including the financial hardship created by any work necessary to bring the property into strict compliance with the ordinance. Paramount to our Supreme Court's consideration was that the request for a dimensional variance had to be due to the configuration of the property at issue. This is evidenced by one of the main reasons cited by the Court in granting the variance that, "[t]o hold otherwise would prohibit the rehabilitation of neighborhoods by precluding an applicant who wishes to renovate a building in a blighted area from obtaining the necessary variances." *Id.*, 554 Pa. at 264, 721 A.2d at 50.

Moreover, while *Hertzberg* eased the requirements for granting a variance for dimensional requirements, it did not make dimensional requirements, as Keystone's position suggests, "free-fire zones" for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially "hurt" if it could not do what it wanted to do with the property, even if the property was already being occupied by another use. If that were the case, dimensional requirements would be meaningless—at best, rules of thumb—and the planning

---

3. Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Collier Stone Company v. Township of Collier Board of Commissioners*, 735 A.2d 768 (Pa.Cmwlth.1999). An abuse of discretion is established where the findings are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

efforts that local governments go through in setting them to have light, area (side yards) and density (area) buffers would be a waste of time. Moreover, adjoining property owners could never depend on the implicit mutual covenants that placing dimensional restrictions on all property would only be varied when there were compelling reasons that not to do so would create a severe unnecessary hardship.

In this case, no severe undue hardship was articulated because even using the *Hertzberg* standard, no evidence exists that warrants the grant of the dimensional variance. The variance to increase the size of Keystone's sign board from 1,500 square feet to 2,400 square feet is not justified just so it can be seen from a road; requiring a larger sign just means that the lot on which the sign is located is too far from the road; *see Upper Merion Township v. Valley Forge Associates,* 16 Pa. Cmwlth. 167, 327 A.2d 874 (1974), or that a variance is needed so that the sign will stand out above the existing sign clutter, also not a justifiable reason to grant a variance. *See, e.g., In re Pierorazio,* 53 Pa.Cmwlth. 593, 419 A.2d 221 (1980) (a desire for more profit is not an economic hardship satisfying the requirements for a zoning variance).

The variance needed just to build the advertising sign because it is located within 500 feet of another non-accessory outdoor advertising sign, in this case, not one but two signs, is also not justified. First, the variance from the 500 feet requirement is not a true dimensional variance. A dimensional restriction deals with restrictions caused by the size of the lot,

not, as here, by conditions off the lot. What the 500 feet spacing requirement does, in effect, is create a "floating zone" that only permits signs on property when there is not another non-accessory advertising sign within 500 feet. The standard to be met here then is more akin to a use variance than a dimensional variance, and because the property is not valueless, that standard certainly has not been met. *Hansen Properties III v. Zoning Hearing Board,* 130 Pa.Cmwlth. 8, 566 A.2d 926 (1989). This analysis is equally applicable to the variance request from the requirement that no sign be located within 600 feet of the Walt Whitman Bridge. Even if we consider those requests dimensional variances, just because a person wants to do more with his or her land in addition to the use that it is presently being used for is not a sufficient unnecessary hardship unique to that piece of land.[1]

Accordingly, because *Hertzberg* still requires an applicant to prove an unnecessary hardship and all that Keystone has done is show that the sign is necessary to maximize the profit of the landowner, the trial court's decision reversing the Board's grant of a variance is affirmed.

### ORDER

AND NOW, this *10th* day of *April,* 2001, the order of the Court of Common Pleas of Philadelphia County, dated May 25, 2000, is affirmed.

---

4. Nor is an unnecessary hardship created because the sewage treatment plant requires a large amount of unoccupied, grassy area in order to isolate it from the surrounding area. Again, nothing guarantees a property owner that every square foot of his property can be

occupied. Just because Keystone entered into a sub-lease arrangement with PAID does not prove that the property could not be used for any other purpose but only that PAID wanted to utilize every inch of its leased property and the hardship was self-created.