# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Monmalt Partners and           :
Stroschein Pointe Partners,     :
               Appellants   :
                               :
          v.                         :   No. 1992 C.D. 2016
                               :   Submitted: April 6, 2017
Zoning Hearing Board of the     :
Municipality of Monroeville     :
                               :
          v.                         :
                               :
Municipality of Monroeville and :
Key Development Partners, LLC    :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE JULIA K. HEARTHWAY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**         **FILED: May 4, 2017**

        In this zoning appeal, Monmalt Partners (Monmalt) and Stroschein Pointe Partners (collectively, Objectors) ask whether the Court of Common Pleas of Allegheny County[1] (trial court) erred in affirming a decision of the Zoning Hearing Board of the Municipality of Monroeville (ZHB) that granted Key Development Partners' (Applicant) applications for three dimensional variances to permit a reduction in the number of required parking spaces and to allow encroachments into the minimum front and side yard setbacks for the parking spaces in connection with Applicant's proposed restaurant and retail use.

---

[1] The Honorable Joseph M. James presided.

Objectors assert the ZHB committed an error of law, abused its discretion or made findings not supported by substantial evidence when it granted the requested variances. Upon review, we affirm.

## I. Background

The property at issue, which is a triangular-shaped lot, is located at 4020 William Penn Highway in Monroeville (subject property). The property is currently owned by Tony Tyke, Inc (Tony Tyke). Applicant has an agreement with Tony Tyke to purchase the subject property.

The subject property lies in a C-2 business commercial zoning district. It is currently improved with an automobile garage and repair shop that was formerly a gas station. Applicant proposes to raze the existing automobile garage and repair shop and construct a "[s]ingle story commercial building for future tenant(s) – possibly retail sales, restaurant." Reproduced Record (R.R.) at 48a (Applicant's variance application); see also Supplemental Reproduced Record at 34b (plan depicting one proposed building with a retail unit and a restaurant unit). Applicant's proposed restaurant and retail uses are permitted uses in the C-2 district. The C-2 district requires a minimum front yard of 10 feet and a minimum side yard of 15 feet. There is no required minimum rear yard in the C-2 district.

Of further note, as the trial court explained, Objector Monmalt Partners, which owns the property adjacent to the subject property, entered into a reciprocal easement agreement with Tony Tyke in 1996. The easement agreement provides the parties with mutual rights of ingress and egress by way of a driveway located between their properties.

In February 2016, Applicant filed applications with the ZHB seeking three variances. First, Applicant requested a variance from Section 308 of the Monroeville Zoning Ordinance (zoning ordinance) (relating to off-street parking). Specifically, Applicant sought a variance to reduce the required number of parking spaces (which is calculated based on the square footage of Applicant's proposed building) from 57 to 53.

Next, Applicant sought a variance from Section 207.8 of the zoning ordinance, which states:

> No required yard in any district shall be used for parking vehicles except on a driveway. In single-family developments, not more than twenty-five percent of the front yard may be devoted to driveway access. In single-family attached developments, not more than fifty percent of the front yard may be devoted to driveway access. In multiple family developments, not more than fifty percent of the front yard may be devoted to driveway access. In non-residential districts, driveway access shall be as permitted by site plan approval.

Id. (emphasis added). As to the requested variance from this provision, Applicant indicated that portions of 25 of its proposed parking spaces would be within the required minimum 10-foot front yard of the subject property.

In addition, Applicant sought another variance from Section 207.8 of the zoning ordinance. Specifically, Applicant indicated that portions of nine of its proposed parking spaces would be within the required minimum 15-foot side yard of the subject property.

The ZHB held a hearing on Applicant's three variance requests. At the hearing, Applicant presented the testimony of Boyd Ernzer of Fahringer, McCarty and Grey. As to the hardship suffered by Applicant if its variance requests were denied, Ernzer testified:

> It is the unique shape of the lot. It is a triangular lot instead of a typically square or rectangular lot. There are two front yard[s] as opposed to one. Most development sites have one front [yard], one rear yard and two side yards. In this case we have either front yards or side yards or one front yard or two front yards, one rear yard and one side yard.

ZHB Op., Finding of Fact (F.F.) No. 13 (quoting ZHB Hr'g, Notes of Testimony (N.T.), 3/1/16, at 20). Ernzer further testified: "The [subject] property cannot be reasonably developed or redeveloped in strict conformance to the [zoning] ordinance without granting the variance[s]." F.F. No. 14 (quoting N.T. at 21). Ernzer also testified regarding the effect that the granting of the variances would have on the neighborhood and the public welfare, stating: "The variance[s] will not alter the character of the neighborhood or be detrimental to the public welfare." F.F. No. 15 (quoting N.T. at 21).

In addition, Ernzer testified regarding the size constraints of the building on the subject property, stating:

> [A] restaurant of 3,000 square feet you can't really get any smaller than that. We are doing an Arby's right now. It is 2,800 or 2,900 feet. That is a fast food restaurant. Most sit-down restaurants, I mean, are in the five to six to 7,000 square feet. So the restaurant really could not be reduced in any way shape or form.

4

F.F. No. 16 (quoting N.T. at 22). Ernzer provided similar testimony concerning the size of the retail component of the proposed building. N.T. at 23.

In opposition to Applicant's variance requests, Jack Finnegan, Esquire, presented brief argument on behalf of Objectors, which own property adjacent to and near the subject property. Finnegan's main points of opposition were the asserted lack of hardship and the existence of the easement agreement, which he asserted made the granting of the variances improper. Objectors presented no witness testimony or documentary evidence other than the easement agreement.

Based on its factual findings, the ZHB made the following conclusions of law. Applicant's proposed construction of a retail store and restaurant is a permitted use in a C-2 district. Section 201(c) of the zoning ordinance. Because Applicant's proposed use is a permitted use, dimensional rather than use variance standards apply. The difference between the two is significant. See Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh, 721 A.2d 43 (Pa. 1998).

In particular, because Applicant is seeking dimensional variances for a permitted use, it is only asking for a reasonable adjustment of zoning regulations in order to use the property in a manner consistent with applicable regulations. Further, because Applicant is seeking dimensional rather than use variances, it was not required to prove the subject property could not be used absent the requested

5

variances. The quantum of proof required to establish unnecessary hardship in the context of a dimensional variance is lesser than when seeking a use variance.

In addition, when considering the grant of a dimensional variance, multiple factors such as the economic detriment to the applicant if the variance is denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements, and the characteristics of the surrounding neighborhood shall be considered. Hertzberg.

An applicant may obtain a variance where the following conditions are met: (1) unique physical characteristics of the property, rather than the operation of the zoning ordinance create an unnecessary hardship; (2) because of the unique physical characteristics of the property, the property cannot be developed in conformity with the provisions of the zoning ordinance and the authorization of a variance is therefore necessary to enable reasonable use of the property; (3) the applicant has not created the hardship; (4) the variance, if authorized, will not alter the character of the neighborhood or adversely affect possible future development of adjacent property; and, (5) the variance, if approved, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation at issue. Section 910.2 of the Pennsylvania Municipalities Planning Code[2] (MPC).

---

[2] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §10910.2. Section 910.2 was added by the Act of December 21, 1988, P.L. 1329.

The ZHB credited Ernzer's testimony that the triangular shape of the subject property and the presence of two front yards represented a physical hardship to development of the subject property. Concl. of Law No. 8 (citing N.T. at 20-21). The ZHB also credited Ernzer's testimony that the variance would not alter the character of the neighborhood or be detrimental to the public welfare. ZHB Op., Concl. of Law No. 10 (citing N.T. at 21).

In addition, the ZHB determined Objectors' complaints regarding the private easement and its effect on the subject property were not proper matters for the ZHB to decide.

In sum, the ZHB concluded Applicant met its burden of establishing its entitlement to the requested variances. Thus, the ZHB granted those requests. Objectors appealed to the trial court.

Without taking additional evidence, the trial court affirmed. The trial court concluded the ZHB properly determined Applicant satisfied each of the required criteria necessary to obtain the requested dimensional variances. Objectors now appeal to this Court.

## II. Discussion
## A. Variances
## 1. Contentions

On appeal,[3] Objectors contend Applicant failed to offer sufficient evidence to support its argument that the requested variances were necessary based on: (1) the triangular shape of the subject property; (2) the alleged hardship created by the easement agreement between Monmalt and Tony Tyke, and the size constraints of the subject property; and, (3) the assertion that the subject property cannot be economically developed without approval of the variances.

Objectors argue the only record evidence that supports Applicant's arguments is the unsupported and self-serving statements of Ernzer and Steve Panko, Applicant's representative. Objectors assert Ernzer and Panko did not present any evidence to support their statements. They contend "an applicant cannot meet his burden of proof by simply offering his personal opinion that this development concept would not be marketable in accordance with present zoning." Somerton Civic Ass'n v. Zoning Bd. of Adjustment of Phila., 471 A.2d 578, 581 (Pa. Cmwlth. 1984) (citing Appeal of Am. Med. Ctrs., Inc., 422 A.2d 1192 (Pa. Cmwlth. 1980); U. Moreland Twp. Bd. of Comm'rs v. Zoning Bd., 361 A.2d 455 (Pa. Cmwlth. 1976)).

Further, Objectors maintain Applicant did not introduce any evidence that the shape, size and constraints of the subject property imposed a burden on all

---

[3] Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005).

dimensionally compliant uses. In fact, Objectors argue, neither Ernzer nor Panko mentioned whether the subject property could be developed for any other permitted or conditional use in the C-2 district.[4]

In addition, Objectors assert the economic hardship alleged was equally unsupported by sufficient evidence. Objectors contend the testimony of Ernzer and Panko proved nothing. They merely suggested that adherence to the zoning ordinance would impose a financial burden on Applicant's desire to use the subject property as it wished, *i.e.*, a development that would maximize profitability of the subject property. However, Objectors argue, no evidence of profitability, costs or limited use was produced or offered into evidence. Objectors maintain Ernzer and Panko's reliance on the variances the ZHB previously granted to Monmalt for the prior development of the subject property is irrelevant and insufficient to prove the need for a variance as a matter of law.

To that end, Objectors assert Applicant cannot simply rely on the fact that the variances requested are similar to those previously granted to Monmalt, because "any subsequent variance application, even one seeking the same variance

---

[4] More specifically, Objectors contend there is no mention of any burden on other permitted uses of the subject property, which include: amusement uses, auditoriums, banks, business colleges, business services, clubs, convention centers, department stores, food services, funeral homes, medical clinics, nurseries, offices, personal services, shopping centers, studios, theaters, vehicle salesrooms, veterinary clinics, and accessory uses. Additionally, Objectors maintain, Applicant provided no evidence that the subject property could not reasonably be used for any of the permissible conditional uses, including: billboards, churches, commercial communication towers, commercial communication antennae, commercial commuter lots, drive-in restaurants, drive-in theaters, gas stations (keeping in mind that the subject property was used as a gas station for years), heliports, hotels, major excavation, major timbering or logging operations, public uses, utility substations, vehicle sales areas and vehicle services.

for the same parcel of land, is a new application and the applicant must prove all elements necessary to the variance." Omnivest v. Stewartstown Borough Zoning Hearing Bd., 641 A.2d 648, 652 (Pa. Cmwlth. 1994) (holding "each request for a variance must rest on its own facts, and evidence of granting other variances is not only irrelevant, it is inadmissible."); see also Mobil Oil Corp. v. Zoning Bd. of Adjustment of Borough of Dauphin, 291 A.2d 541 (Pa. Cmwlth. 1972).

Objectors further contend the lack of any evidence offered by Applicant beyond the unsupported and self-serving statements of Ernzer and Panko is clear from a review of the ZHB's findings and conclusions, which cite and rely solely on that testimony. Objectors argue the ZHB abused its discretion and committed an error of law because the evidence presented by Applicant fails to substantially, or even minimally, support the grant of the variances, and the ZHB did not comply with and apply proper legal standards for variance requests.

Objectors maintain the ZHB's reliance on Hertzberg was an over-generalization of Pennsylvania law on the issue of hardship. They assert this Court regularly addresses the problems inherent in such a generalization, and in 2005 reiterated its prior holdings, stating:

> Ever since our Supreme Court decided Hertzberg, we have seen a pattern of cases arguing that a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property exactly as he wishes, so long as the use itself is permitted. Hertzberg stands for nothing of the kind. Hertzberg articulated the principle that unreasonable economic burden may be considered in determining the presence of economic hardship. It may also have somewhat relaxed the degree of hardship that

10

> will justify a dimensional variance. However, it did not alter the principle that a substantial burden must attend all dimensionally compliant uses of the property, not just the particular use the owner chooses. This well-established principle, unchanged by <u>Hertzberg</u>, bears emphasizing in the present case. A variance, whether labeled dimensional or use, is appropriate 'only where the property, not the person, is subject to hardship.' <u>Szmigiel v. Kranker</u>, 6 Pa. Cmwlth. 632, 298 A.2d 629, 631 (1972).

<u>One Meridian Partners, LLP v. Zoning Bd. of Adjustment of City of Phila.</u>, 867 A.2d 706, 710 (Pa. Cmwlth. 2005) (quoting <u>Yeager v. Zoning Hearing Bd. of City of Allentown</u>, 779 A.2d 595, 598 (Pa. Cmwlth. 2001)); <u>see</u> <u>also</u> <u>Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment</u>, 771 A.2d 874 (Pa. Cmwlth. 2001).

Objectors maintain that in 2014, this Court summarized the law on this issue, stating: "Although <u>Hertzberg</u> eased the requirements, it did not remove them. An applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship." <u>Tri-County Landfill Inc. v. Pine Twp. Zoning Hearing Bd.</u>, 83 A.3d 488, 520 (Pa. Cmwlth. 2014) (citing <u>Doris Terry Revocable Trust v. Zoning Bd. of Adjustment of City of Pittsburgh</u>, 873 A.2d 57 (Pa. Cmwlth. 2005)). And, this Court recently held: "[W]here no hardship is shown, or where the asserted hardship amounts to a landowner's mere desire to increase profitability, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth by the Supreme Court in <u>Hertzberg</u>." <u>Dunn v. Middletown Twp. Zoning Hearing Bd.</u>, 143 A.3d 494 (Pa. Cmwlth. 2016) (collecting cases). Objectors argue this case is similar to the line of cases cited in <u>Dunn</u>.

11

Here, Objectors argue the testimony of Ernzer and Panko proved nothing. Rather, they tried to suggest, without evidence, that adherence to the zoning ordinance would impose a financial burden on Applicant's preferred use of the subject property. Objectors maintain that, in concluding their testimony, Ernzer and Panko alleged the restaurant could not be any smaller than 3,000 square feet as that was the minimum size required for the proposed development to be successful. Not only is this statement wholly unsupported by expert evidence or testimony, Objectors assert, it is also insufficient to establish unnecessary hardship. Del Greco v. Zoning Hearing Bd. of Borough of Whitehall (Pa. Cmwlth., No. 367 C.D. 2011, filed June 15, 2012), 2012 WL 8666769 (unreported) (citing Larsen v. Zoning Hearing Bd. of City of Pittsburgh, 672 A.2d 286 (Pa. 1996) (mere desire to provide more room does not satisfy unnecessary hardship required for variance)).

For these reasons, Objectors ask that this Court reverse the decisions of the trial court and the ZHB that granted Applicant's variance requests.

## 2. Analysis

Initially, we note, this Court may not substitute its interpretation of the evidence for that of the ZHB. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005). It is the ZHB's function to weigh the evidence before it. Id. The ZHB is the sole judge of the credibility of witnesses and the weight afforded their testimony. Id. Further, we must view the evidence in a light most favorable to the prevailing party, who must be given the benefit of all reasonable inferences arising from the evidence. In re McGlynn, 974 A.2d 525 (Pa. Cmwlth. 2009).

12

A ZHB may grant a variance when the following criteria are met:

(1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

Tri-County Landfill, 83 A.3d 488 at 520.

A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations. Hertzberg. The same criteria apply to use and dimensional variances. Id. However, in Hertzberg, our Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for dimensional variances, as opposed to use variances.

Under Hertzberg, courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance. These factors include: "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." Id. at 50.

13

Although Hertzberg eased the requirements, it did not remove them. Tri-County. Thus, an applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship. Id. Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in Hertzberg. Id.

Nevertheless, as this Court explains: "Hertzberg articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship." Soc'y Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment, 42 A.3d 1178, 1188 (Pa. Cmwlth. 2012) (quoting Yeager v. Zoning Hearing Bd. of City of Allentown, 779 A.2d at 598). Further, in Marshall v. City of Philadelphia, 97 A.3d 323 (Pa. 2014), the Pennsylvania Supreme Court stated: "This Court has repeatedly made clear that in establishing hardship, an applicant for a variance is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." Id. at 330 (emphasis in original).

In Marshall, which also involved a zoning board's grant of a variance, our Supreme Court stated: "It is the function of the [ZHB] to determine whether the evidence satisfies the criteria for granting a variance." Id. at 331. The Supreme Court also reminded this Court: "An appellate court errs when it substitutes its judgment on the merits for that of a zoning board." Id. (citation omitted). Thus, in reversing this Court's decision that overturned decisions of a

14

court of common pleas and a local zoning board that granted an applicant's request for a use variance, the Supreme Court explained:

> While an appellate court might disagree with the [zoning board's] decision, the decision was within the bounds of reason and therefore represented a sound exercise of discretion. The Commonwealth Court's decision indicates no evidence to the contrary. There was no abuse of discretion here. It was error, therefore, for the Commonwealth Court to substitute [its] judgment on the merits for that of the [zoning board]. Doing so was beyond the scope of [the court's] power to review.

Id. at 334 (citations and quotations omitted). The Supreme Court in Marshall explained a zoning board's findings are owed deference, particularly its determination that a variance applicant satisfied the unnecessary hardship criterion. This is particularly so in light of a zoning board's "expertise in and knowledge of local conditions." Id. at 333.

Here, Applicant sought three dimensional variances in order to: (1) reduce the required number of parking spaces from 57 to 53; (2) permit portions of 25 of the parking spaces to encroach between 3 to 10 feet into the required minimum 10-foot front yard; and, (3) permit portions of 9 of the parking spaces to encroach 15 feet into the required minimum 15-foot side yard.

Before the ZHB, Objectors' counsel raised two objections to the grant of the requested variances. First, he asserted the private easement impacted Applicant's proposed development of the subject property. Additionally, he argued Applicant did not prove unnecessary hardship would result if the ZHB

denied the variances. Objectors presented no witness testimony or documentary evidence with the exception of the easement agreement.

In rejecting Objectors' assertions and granting Applicant's three dimensional variance requests, the ZHB made the following pertinent findings and conclusions:

> 13. … [T]estimony was given by [Ernzer] … who stated in regard to the hardships suffered by [Applicant], '[E]ssentially, the hardship is the same hardships as we asked for the first time through. It is the unique shape of the lot. It is a triangular lot instead of a typically square or rectangular lot. There are two front yard[s] as opposed to one. Most development sites have one front [yard], one rear yard and two side yards. In this case we have either front yards or side yards or one front yard or two front yards, one rear yard and one side yard.' [N.T. at] 20.
>
> 14. [Ernzer] further testified, 'The property cannot be reasonably developed or redeveloped in strict conformance to the [zoning] ordinance without granting the variance[s].' [N.T. at] 21.
>
> 15. [Ernzer] also gave testimony in regard to the [e]ffect the variance[s] would have on the neighborhood and public welfare by stating, 'The variance[s] will not alter the character of the neighborhood or be detrimental to the public welfare.' [N.T. at 21].
>
> 16. [Ernzer] also gave testimony in regard to the size constraints of the building by stating, 'a restaurant of 3,000 square feet you can't really get any smaller than that. We are doing an Arby's right now. It is 2,800 or 2,900 feet. That is a fast food restaurant. Most sit-down restaurants, I mean, are in the five to six to 7,000 square feet. So the restaurant really could not be reduced in any way shape or form.' [N.T. at] 22.

16

8. [Ernzer] credibly testified that the triangular shape of the lot and the presence of two front yard[s] represented a physical hardship to the development of the at issue lot. [N.T. at 20-21].

9. As Applicant's proposed use of the [subject property] is a permitted use, the character of the use is not detrimental to the character of the neighborhood.

10. Further, [Ernzer] credibly testified that the variance will not alter the character of the neighborhood or be detrimental to the public welfare. [N.T. at 21].

11. Objectors['] complaints in regard to a private easement and its effect on the subject property are not a proper matter for the [ZHB] to decide on.

12. Applicant has met [its] burden to establish [its] request for [the dimensional variances]. As such, Applicant is entitled to [the dimensional variances].

F.F. Nos. 13-16, Concls. of Law Nos. 8-12 (emphasis added). As evidenced by the record citations accompanying its findings, the ZHB's necessary findings are adequately supported. See N.T. at 20-23.

In turn, these findings support the ZHB's determinations that Applicant satisfied the necessary criteria to obtain the requested variances. In particular: (1) Applicant proved unnecessary hardship would result if the variances were denied because of the subject property's triangular shape and the fact that it has no rear yard, which could otherwise be used for parking *with no minimum required setback*, see Table 201(C) of the zoning ordinance (minimum rear yard setback in C-2 district is "0 feet"); (2) because of its triangular shape, the subject property could not be developed in strict conformity with the zoning ordinance and a variance is necessary to enable reasonable use of the subject property (Ernzer

17

credibly testified the subject property could not be reasonably developed or redeveloped without the requested variances, N.T. at 21); (3) the hardship is not self-inflicted (this is undisputed here); (4) granting the variances would not alter the essential character of the neighborhood or be detrimental to the public welfare (Ernzer credibly testified the grant of the variances would not alter the character of the neighborhood and would not be detrimental to the public welfare, N.T. at 21); and, (5) the variances sought are the minimum variances that would afford relief and represent the least modification possible of the applicable zoning ordinance provisions (based on Ernzer's credible testimony, the ZHB could properly infer that Applicant's proposed restaurant and retail use was the minimum necessary to be viable, N.T. at 22-23; Ernzer also credibly testified the subject property could not be reasonably developed or redeveloped in strict conformance with the zoning ordinance absent the grant of the variances, N.T. at 21; and, Applicant unsuccessfully attempted to create "more than one" alternative site plan for the subject property, N.T. at 23).

In short, as the respected trial court explained:

[Applicant] claims that the requested variances are necessary due to the triangular shape of the lot. [Applicant] stated that the [subject] [p]roperty is different from other lots because it only has three yards and no backyard. [Ernzer] testified that the [subject] [p]roperty cannot be developed due to the triangular shape of the lot. He explained that the [subject property] only has three yards but no rear yard. [Applicant] presented evidence that due to the physical circumstances, there is no possibility the [subject] [p]roperty can be developed in strict conformity with the [zoning] [o]rdinance. [Panko] … asserted that [Applicant] worked through several site plans and could not come up with one that

18

met the [zoning ordinance]. The unnecessary hardship was not created by [Applicant] in this case. [It] did not create the shape of the lot or the location of the roadways. Furthermore, [Applicant] presented sufficient evidence to show that the variance[s], if authorized, will not alter the essential character of the neighborhood and [they are] not detrimental to the public welfare. The character of the neighborhood is commercial and developing the [subject property] as a restaurant will not alter that. Finally, [Applicant] presented evidence that the variance[s], if authorized, will represent the minimum variance[s] that will afford relief and will represent the least modification possible of the regulation in issue. Regarding encroachment of parking into the front yard, parking already exists in that location. Additionally, the [subject] [p]roperty can fit 53 parking spaces but not the required 57. [Applicant] presented evidence that [it] attempted to come up with a site plan [that] met the [zoning ordinance].

Tr. Ct., Slip Op., 11/10/16, at 3-4.

In addition, the ZHB's supported findings and determinations distinguish this case from the line of cases discussed by this Court in Dunn, relied on by Objectors. In those cases, no hardship was proven or the asserted hardship amounted to the landowner's mere desire to increase profitability. Based on the ZHB's supported findings and determinations here, Applicant proved the requisite unnecessary hardship.

Nor is this a case like our unreported decision in Del Greco, also relied on by Objectors, where the asserted hardship arose from the impact of zoning regulations on the entire district rather than the unique physical characteristics of the property. Further, in Del Greco, the applicants admitted they could use the property in conformance with the ordinance without the need for

variance relief. Such is not the case here. Thus, <u>Del Greco</u> is factually distinguishable.

Moreover, contrary to Objectors' assertions, in light of our Supreme Court's pronouncements in <u>Marshall</u>, Applicant was not required to prove that the constraints on development of the subject property imposed a burden on all dimensionally compliant uses or that the subject property could only be developed for another use at prohibitive expense. This is particularly true, where, as here, Applicant seeks only dimensional variance relief and the unnecessary hardship criterion is relaxed. Also, contrary to Objectors' contentions, Applicant did not base its argument regarding unnecessary hardship solely on economic considerations or the personal opinion of its witnesses that the proposed development would not be marketable in accordance with present zoning; rather, Applicant asserted (and the ZHB found) the subject property's unique physical characteristics or conditions, its triangular shape (and lack of a rear yard, which would require no minimum setback), created the hardship. Additionally, through Ernzer's testimony, Applicant proved that the subject property could not be reasonably developed in strict conformance with the zoning ordinance absent the grant of the requested variances.

Further, while Objectors are correct that, during his testimony, Ernzer referenced the numerous variances the ZHB previously granted in connection with the prior development of the subject property, as is evident from the ZHB's findings and conclusions, the ZHB did not base its decision on the grant of those prior variances. Rather, it relied on the testimony of Applicant's witnesses as to

20

each of the necessary variance criteria. Thus, the ZHB's decision is not inconsistent with this Court's holdings in Omnivest and Mobil Oil, to the extent that these cases indicate that each variance request must rest on its own facts and proof of the elements necessary to obtain the variance rather than on evidence of the grant of prior variances.[5] Additionally, while Objectors take issue with Ernzer's mention of the variances granted in connection with the prior development of the subject property, Objectors did not object to Ernzer's testimony on this point when he provided it to the ZHB.

## B. Easement/Site Plan
### 1. Contentions

In addition, Objectors contend the ZHB erred in neglecting to consider the easement agreement and the requested variances via a site plan. To that end, Objectors assert the ZHB erred when it ignored the express requirements of the zoning applications and the requirements related to plan submission set forth in its own zoning ordinance. Objectors argue the plain language of paragraph 7 of the zoning applications expressly requires an applicant to submit a plot plan along

---

[5] In any event, Omnivest v. Stewartstown Borough Zoning Hearing Board, 641 A.2d 648, 652 (Pa. Cmwlth. 1994) and Mobil Oil Corp. v. Zoning Board of Adjustment of Borough of Dauphin, 291 A.2d 541 (Pa. Cmwlth. 1972), relied on by Objectors, are distinguishable. In Omnivest, this Court held that a variance applicant could not rely on the grant of an expired variance in order to meet its burden on a new application because each variance application and case is typically "dealt with anew and apart." Id. at 651. We stated, "any subsequent variance application, even one seeking the same variance for the same parcel of land, is a new application and the applicant must prove all elements necessary to the variance. To hold otherwise would negate the ordinance provisions limiting the duration of the variance authorization and would create confusion in zoning matters involving expired variances." Id. Further, in Mobil Oil, we rejected a use variance applicant's reliance on the mere fact that in the past the zoning board granted a variance permitting the same type of use as the use proposed by the applicant in the zoning district at issue. Thus, neither Omnivest nor Mobil Oil compels the result Objectors seek here.

21

with a zoning application.  Further, Sections 306.2(b) and 359-26(C) of the zoning ordinance require that such plans show "all existing streets, rights-of-way, and easements related to the development."  Objectors maintain the ZHB completely ignored these requirements.  As such, it erred by not requiring Applicant to submit a plot plan depicting the easement described in the easement agreement as required by its zoning applications and the terms of the zoning ordinance.

## 2. Analysis

With regard to Objectors' argument that Applicant's variance applications were deficient because they did not include a plot plan that depicted the easement, our review of the transcript before the ZHB reveals Objectors did not raise this issue.  Thus, it is waived.  Mack v. Zoning Hearing Bd. of Plainfield Twp., 558 A.2d 616 (Pa. Cmwlth. 1988) (objectors waived issue by failing to raise it before zoning board).

In any event, as to Objectors' contentions regarding the existence of the private easement, "the protection of a private easement is a title concern, not a zoning concern."  McClay v. Zoning Hearing Bd. of U. Chichester (Pa. Cmwlth., No. 1280 C.D. 2007, filed February 25, 2010), Slip Op. at 6, 2010 WL 9512170 at *3 (unreported) (emphasis added).  Indeed, as we recently explained at length in BR Associates v. Board of Commissioners of Township of Upper St. Clair, 136 A.3d 548 (Pa. Cmwlth. 2016), issues concerning property rights in instruments of title must be resolved in the courts.  Therefore, we discern no error in the ZHB's determination that Objectors' complaints regarding the private easement and its effect on the subject property were not proper considerations upon which the ZHB could base its decision.  Concl. of Law No. 11.

22

## III. Conclusion

For all the foregoing reasons, we affirm.


ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Monmalt Partners and        :
Stroschein Pointe Partners,      :
                      Appellants   :
                                 :
              v.                :   No. 1992 C.D. 2016
                                 :
Zoning Hearing Board of the    :
Municipality of Monroeville     :
                                 :
              v.                :
                                 :
Municipality of Monroeville and :
Key Development Partners, LLC :

# O R D E R

      **AND NOW**, this 4th day of May, 2017, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.

                                       _____

                                       ROBERT SIMPSON, Judge