IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Heck,                                  :
                    Appellant              :
                                            :
        v.                                  : No. 1900 C.D. 2017
                                            : ARGUED: November 13, 2018
Worcester Township Zoning                   :
Hearing Board and Worcester                 :
Township and Peter Horgan                   :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED: December 19, 2018

        Appellant Paul Heck (Objector) appeals from the Court of Common Pleas of

Montgomery County's (Trial Court) December 1, 2017 Order, through which the

Trial Court affirmed the Worcester Township Zoning Hearing Board's (Board)

February 3, 2017 decision to grant a dimensional variance sought by Peter Horgan

for a property located at 2131 Bethel Road (Property) in Worcester Township

(Township). After careful review, we reverse the Trial Court's Order.

## Background

        The Property is comprised of 7.67 acres and zoned "AGR"[1] under the

Worcester Township Zoning Ordinance (Zoning Ordinance). The Property is

rectangular in shape, with dimensions of roughly 300 feet by 1160 feet and contains

a single-family home. Board's Decision at 3. Judy Graham owned the Property and

---

[1] "AGR" is defined in the Zoning Ordinance as shorthand for the Township's "Agricultural District." Zoning Ordinance § 150-5.

lived on premises in the home until her death in December 2010, after which title was transferred by her estate to Wendy G. Matthews[2] on December 16, 2011. Original Record (R.) at 190-94; Notes of Testimony (N.T.), 11/22/16, at 53-54. The Property remained unoccupied after Ms. Graham's passing and, as the years passed, the house and surrounding grounds fell into disrepair. On November 15, 2012, Ms. Matthews placed the Property on the market. N.T., 11/22/16, at 53-54; R. at 218.

On October 25, 2016, Ms. Matthews entered into an agreement of sale for the Property with Mr. Horgan. The agreement of sale was contingent upon Mr. Horgan receiving all necessary approvals from the Township to allow for subdivision of the Property into two parcels. R. at 195-210. Shortly thereafter, Mr. Horgan filed a Request for Variance (Request) with the Board, seeking a dimensional variance from the requirement that **each** parcel have a minimum width of 250 feet along its frontal boundary.[3] *Id.* at 13-16; *see* Zoning Ordinance § 150-12.B ("Minimum lot width. All lots shall meet the following lot width requirement . . . Lots which front secondary collector or primary streets (highways) shall have a minimum lot width measured at both the building and street lines of at least 250 feet for every building or use.").

As proposed, the Property would be split into two parcels, one measuring 3 acres in size, with 275 feet of frontage along Bethel Road, and the other being a 4.67-acre "flag lot" that included a narrow, 25-foot-wide "pole," abutting the length of

---

[2] Ms. Matthews was the executrix of Ms. Graham's estate. R. at 191.

[3]    Flag lots with 25 foot access strips are permitted in Worcester Township under [Zoning Ordinance] Section 150-179; however, because of the provisions of [Zoning Ordinance] Section 150-12.B(2) requiring a minimum 250 foot lot width at the building line and at the street line, flag lots are not permitted in the AGR District if the flag lot would access onto a secondary collector or primary street [such as Bethel Road].

Board's Decision at 3-4.

the smaller parcel and affording access to the broader "flag" from Bethel Road via a driveway. R. at 215-16; N.T., 11/22/16, at 15-18.

The Board held a hearing regarding Mr. Horgan's Request on November 22, 2016. John Anderson, a civil engineer, testified as an expert witness in support of the Request. Mr. Anderson noted initially that Mr. Horgan was abandoning a development plan that had been proposed by Pat Sparango, owner of a neighboring property, and approved by the Board in 2006, whereby the Property would have been subdivided into 3 parts and, utilizing part of Mr. Sparango's land, would have been accessed via a common driveway. N.T., 11/22/16, at 10-12; N.T., 12/27/16, at 74; *see* R. at 188-89. Mr. Anderson then discussed Mr. Horgan's desired subdivision plan, stating that the Property was "very narrow for its depth," which made it impossible to subdivide it without getting a dimensional variance regarding lot width at the street line. N.T., 11/22/16, at 15-18. In Mr. Anderson's opinion, the proposed plan called for a "very reasonable use of the [P]roperty . . . [in which Mr. Horgan would] utiliz[e] one lot for [his] eventual residence and then sell[] off the rear lot as part of the subdivision." *Id.* at 19. According to Mr. Anderson, this use would not alter the essential character of the surrounding area,[4] and represented the minimum variance necessary to afford relief. *Id.* at 19-22.[5] Mr. Anderson also noted that the

[4] Mr. Anderson noted that there are "other [nearby] flag lots that [are] . . . very similar to this particular [proposed] lot [subdivision,]" singling out a neighboring property that had been subdivided at some point in the past in a manner virtually "identical" to that sought by Mr. Horgan. N.T., 11/26/16, at 20.

[5] Two brief testimonial interludes occurred next. Mark Constable, owner of a neighboring property, questioned Mr. Anderson about the Property's topography in the context of stormwater management, closing with comments in favor of Mr. Horgan's Request. N.T., 11/26/16, at 25-31. Mr. Constable was followed by Mary Grace Sparango, who identified herself as having power-of-attorney for Pat Sparango, her father. *Id.* at 32-36. Ms. Sparango was eventually sworn in, after some discussion about whether she had legal authority to represent her father, but declined to

3

Property could theoretically be subdivided into four plots and still be in compliance with the Zoning Ordinance's minimum lot size requirement for the AGR district, but that Mr. Horgan had instead chosen to pursue a lesser, two-parcel subdivision plan. *Id.* at 15-16.

Thereafter, Objector, who owns a parcel that abuts the Property, questioned Mr. Anderson about the placement of the driveway, as well as whether the depth of the Property in relation to its width was actually a unique physical characteristic that justified a dimensional variance. *Id.* at 37-41. Objector also pointed out that the deterioration of the Property's single-family home had not been caused by the Township, implying that it was Ms. Matthews' fault that the house and its grounds were in such poor condition. Objector further questioned Mr. Anderson about whether he was "aware that there are six similarly sized 300-foot lots" in the area,[6] and contested the propriety, under the circumstances, of referencing relief the Board had granted in years past regarding other requests for variances. *Id.* at 41-44.

Mr. Horgan then testified, providing additional information regarding how he desired to use the Property. According to Mr. Horgan, he and his wife lived nearby and were looking to "downsize" from their current home. *Id.* at 49. Assuming that the Request was granted, they would demolish Ms. Graham's former residence and build a "ranch house" on the smaller, 3-acre lot. *Id.*; *see* N.T., 12/27/16, at 70 (Mr. Horgan's attorney stated, "Any revitalization of the property would involve

---

question any of the witnesses and then expressed her support for the Request toward the end of the hearing. *See id.* at 32-36, 48, 57, 59.

[6] The Board later pointed out that Objector's own documentary evidence did not support this claim, as "there are only two (2) other lots shown on [Objector's proffered] tax map fronting on Bethel Road, [which are] not impacted by the [nearby Pennsylvania] [T]urnpike [and are] of a similar configuration, but with somewhat less square footage than the [Property]." Board's Decision at 5.

4

demolishing the existing structure and rebuilding a new dwelling in place of that one[.]"). They would then keep the larger, 4.76-acre flag lot "for one of our children or to sell off, however that plays out." N.T., 11/22/16, at 49-50.

Objector again testified that the variance was not warranted, in part because "[t]here is absolutely nothing unique here [about the Property]" that justified granting a dimensional variance, stating that the current use of the Property was "fabulous" and, consequently, "[t]here is no reason to chop[] it up." *Id.* at 51-52. He then responded to several questions posed by Mr. Horgan's attorney regarding his knowledge of the condition of the Property's single-family home, as well as about the distance between Objector's driveway and the one proposed for the flag lot. *Id.* at 53-55.

The Board then continued the matter until the next scheduled hearing, on December 27, 2016. *Id.* at 59-60. At this second hearing, both Objector and Mr. Horgan's attorney entered additional exhibits into the record and reiterated a number of the points that had been made in support of their respective positions at the previous hearing. *See* N.T., 12/27/16, at 64-99. The Board then closed the record and voted unanimously to grant Mr. Horgan's Request. On February 3, 2017, the Board issued its Decision.[7]

---

[7] The Board specifically found:

> A. There are unique physical circumstances or conditions, including narrowness or shallowness of lot size or shape, and other physical conditions peculiar to the . . . [P]roperty, resulting in an unnecessary hardship which is due to such conditions, and not the circumstances or conditions generally created by the provisions of the Zoning Ordinance in the neighborhood or district in which the [P]roperty is located.
>
> B. Because of such physical circumstances or conditions, there is no possibility that the [P]roperty can be subdivided and used in strict conformity with the provisions of the Zoning Ordinance, and the

Objector then appealed to the Trial Court on March 3, 2017. The Trial Court took no additional evidence and subsequently affirmed the Board's Decision on December 1, 2017. R. at 451. This appeal followed.

## Issues

On appeal,[8] Objector argues that the Board erred in granting Mr. Horgan's Request, and that the Trial Court erred in affirming the Board, because a dimensional variance was not warranted under the circumstances. *See* Objector's Br. at 10. Objector offers the following reasons for his assertion: (1) the Property's dimensions are not "unique physical conditions" that create an "unnecessary hardship" justifying

> authorization of a variance is therefore necessary to enable the reasonable use of the [P]roperty.
> C. The hardship has not been created by [Mr. Horgan].
> D. The granting of the variance will not frustrate the intent of the ordinance, or adversely impact the development of adjoining properties, or alter the essential character of the neighborhood;
> E. The variance requested is the minimum variance to afford relief under the circumstances.

Board's Decision at 6. Furthermore, the Board stated:

> [Mr. Horgan's] proposal virtually mirrors the flag lot configuration on the immediately adjacent parcel. There are other flag lots and numerous cul-de-sacs serving smaller lots in the area. Finally, the Board has also taken into consideration the additional factor regarding the dilapidated condition of the [P]roperty, which, has now existed for ten (10) years since the last approval by this Board. It is therefore appropriate to now conclude that the [P]roperty is likely to remain in such dilapidated condition, absent zoning relief from this Board, which will make reasonable development and re-use of the property financially feasible.

*Id.* at 9.

[8] Since the Trial Court took no additional evidence, our standard of review is restricted to determining whether the Board committed an abuse of discretion or an error of law. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639-40 (Pa. 1983). "We may conclude that the Board abused its discretion only if its findings are not supported by substantial evidence. . . . By 'substantial evidence' we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 640 (citations omitted).

6

a dimensional variance, especially in light of the Property's longstanding, successful usage as an undivided, single-family, residential plot; (2) any hardship impeding usage of the Property is self-created, both in terms of Ms. Graham's former home being allowed to deteriorate after her passing, and by virtue of Mr. Horgan's desire to subdivide the Property in accordance with his preferred development plan; and (3) the 90% decrease in frontage along Bethel Road that would be permitted by virtue of the dimensional variance (*i.e.*, 25 feet versus the Zoning Ordinance-mandated 250 feet) is not the least modification necessary to afford relief. *Id.* at 14-25.

The Board responds that

> [t]he long and narrow configuration of the [Property] creates an unnecessary hardship, especially when one also considers the mirror image flag lot configuration of the adjacent parcel to the east, and the fact that the [P]roperty has been vacant and on the market for years. As a result, the Board reasonably concluded that there is apparently no buyer who is willing to purchase the 7.67 acres [*sic*] and build just one (1) very large mansion on this [Property] right next to the [Pennsylvania] Turnpike and adjacent to an identical flag lot configuration.

Board's Br. at 15.[9] According to the Board, "[t]he rear five (5) acres of this [Property] are basically not usable without the minor relief granted[,]" which, in the Board's view, is the least variance necessary to enable development of the Property and will not alter the essential character of the surrounding area. *Id.* at 7, 16-17.

## Analysis

An applicant must satisfy a heavy burden of proof when seeking a variance, as it is well-settled that "variance[s] should be granted sparingly and only under

---

[9] The Township did not file a separate brief on its own behalf and, instead, has adopted the Board's brief as its own. *See* Township's Joinder Br. at 2.

exceptional circumstances." *Rittenhouse Row v. Aspite*, 917 A.2d 880, 884-85 (Pa. Cmwlth. 2006). Under the Pennsylvania Municipalities Planning Code (MPC),[10] a zoning board may grant an applicant's request for a variance only where *all* of the following conditions are satisfied:

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

> (3) That such unnecessary hardship has not been created by the [applicant].

> (4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

> (5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Section 910.2(a) of the MPC, 53 P.S. § 10910.2(a).[11]

---

[10] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[11] Added by the Act of December 21, 1988, P.L. 1329. The Township has expressly adopted this variance test by reference. *See* Zoning Ordinance § 150-139(A) ("Requests for variances shall be considered by the . . . Board in accordance with the procedures contained in the [MPC], §§

> To justify the grant of a dimensional variance, courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building [or property] into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.

*Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 50 (Pa. 1998). "The quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Id.* at 48. However, this does not mean that "dimensional requirements . . . [are] 'free-fire zones' for which variances [can] be granted when the party seeking the variance merely articulate[s] a reason that it [will] be financially 'hurt' if it [cannot] do what it want[s] to do with [a] property." *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of City of Philadelphia*, 771 A.2d 874, 877 (Pa. Cmwlth. 2001).

To that effect, our appellate courts have

> consistently reject[ed] requests for dimensional variances where proof of hardship is lacking. Where no hardship is shown, or ***where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in Hertzberg***.

*Soc'y Hill Civic Ass'n v. Philadelphia Zoning Bd. of Adjustment*, 42 A.3d 1178, 1187 (Pa. Cmwlth. 2012) (emphasis added). Indeed, "[a] variance, whether labeled dimensional or use, is appropriate 'only where the *property*, not the person, is subject to hardship,'" and, thus, the onus is on the applicant to firmly establish that "a substantial burden . . . attend[s] *all* dimensionally compliant uses of the property, not just the particular use [that the applicant has chosen]." *Yeager v. Zoning Hearing*

---

150-139B and 150-142K of this [Zoning Ordinance] and Article XXVI of Chapter 150 of the Worcester Township Code.").

*Bd. of the City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (citation omitted).

Here, it is evident Mr. Horgan's Request was driven by his desire to subdivide the Property, something which cannot be done without special dispensation from the Zoning Ordinance's lot-width requirements. *See* N.T., 11/26/16, at 18, 49-50 (testimonial statements by Mr. Anderson and Mr. Horgan). The Board recognized as much when it determined that "[b]ecause of [the Property's unique] physical circumstances or conditions, there is no possibility that [it] can be subdivided and used in strict conformity with the provisions of the Zoning Ordinance." Board's Decision at 6.

However, while splitting the Property into two parcels might be financially advantageous to Mr. Horgan through a future sale of the flag lot, and the Township would benefit from rejuvenation of the deteriorated Property, these interests do not establish a suitable basis for granting Mr. Horgan's Request. Indeed, the Board should have questioned whether the Property's unique physical characteristics present a significant impediment to developing the Property in conformity with the Zoning Ordinance's dictates, *not* whether the Zoning Ordinance's strictures act as an obstruction to Mr. Horgan's development proposal. Consequently, because there is no evidence of record showing that Mr. Horgan cannot rehabilitate the Property in a Zoning Ordinance-compatible manner, there is no support for the Board's conclusion that the Property is burdened by an unnecessary hardship justifying relief from the Zoning Ordinance's lot-width requirements. Therefore, we conclude that

the Board erred in granting Mr. Horgan's Request,[12] and the Trial Court erred in affirming the Board's Decision.

_____
ELLEN CEISLER, Judge

---

[12] As noted *supra*, Ms. Graham's former home would have to be knocked down for *any* type of redevelopment project to proceed, even one that fully complies with the Zoning Ordinance, such as using the entire existing Property as the situs of a single house. *See* N.T., 12/27/16, at 70. Therefore, the dilapidated state of the home does not justify the Board's grant of the requested dimensional variance.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul Heck,                                    :
                    Appellant                 :
                                              :
          v.                                  :  No. 1900 C.D. 2017
                                              :
Worcester Township Zoning                     :
Hearing Board and Worcester                   :
Township and Peter Horgan                     :

                            O R D E R


        AND NOW, this 19th day of December, 2018, the Court of Common Pleas of

Montgomery County's December 1, 2017 Order is hereby REVERSED.


                              _____
                              ELLEN CEISLER, Judge