**COLLIER STONE COMPANY,**
Appellant,

v.

**TOWNSHIP OF COLLIER BOARD OF COMMISSIONERS.**

Commonwealth Court of Pennsylvania.

Argued June 14, 1999.

Decided Aug. 6, 1999.

David Blancett-Maddock, Pittsburgh, for appellant.

Blaine A. Lucas, Carnegie, for appellee.

Before DOYLE, J., FRIEDMAN, J., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Collier Stone Company (Applicant) appeals from an order of the Allegheny County Court of Common Pleas (trial court) which affirmed the decision of the Board of Commissioners of Collier Township (Board) denying Applicant's conditional use application to conduct quarrying

operations for lack of standing. We also affirm.

■■■ Applicant operates a stone quarry as a valid nonconforming use on a 125.26–acre tract of land in an R–3 (medium density) residential district. (Board's Findings of Fact, Nos. 4, 5.) Applicant applied to the Board for a conditional use[1] permit to enable it to expand and move its current quarrying operation to a new site, consisting of sixty acres of a 332–acre parcel of land situated across the road from its current quarry. (Board's Findings of Fact, No. 6, R.R.126a; Land Use Appeal at ¶ 8, R.R. 376a.) The parcel at issue is referred to as the "Nixon property" because it is owned by Clarence B. Nixon, Jr., Charles Nixon and the Estate of Harriet Hall Nixon. (R.R. 2a; Board's Findings of Fact, No. 6, R.R. 3a; Land Use Appeal at ¶ 4, R.R. 375a; R.R. 389a.) Part of the Nixon property is located in an R–3 zoning district and part is located in an I–1 (light industrial use) zone. (R.R. 158a–59a.) The Nixon property has been certified by the Commonwealth as being devoted to agricultural use, agricultural reserve and/or forest reserve wood lots and has obtained "Clean and Green" status under the Pennsylvania Farmland and Forest Land Assessment Act of 1974 (Farmland Act),[2] which status has resulted in preferential tax assessment and, thus, reduced taxes. (Board's Findings of Fact, Nos. 6–8; R.R. 161a; Land Use Appeal at ¶ 7, R.R. 375a.) The requested change in use would eliminate the property's preferential tax assessment[3] and change the zoning status of that portion of the property in the R–3 zoning district to I–1 (light industrial use). (Board's Findings of Fact, No. 8; Land Use Appeal at ¶ 7, R.R. 375a; Zoning Ordinance, ch. 27 § 406, R.R. 559a.)

■■■ The Board denied Applicant's application for, among other reasons, a lack of standing.[4] (Board's Findings of Fact, No. 8.) Under the MPC, only a "landowner" has standing to apply for relief in zoning matters, *Coolbaugh Township Board of Supervisors v. TIAB Communications Corp.*, 147 Pa.Cmwlth. 371, 607 A.2d 859 (1992), and the Board found that Applicant did not own the property in question. (Board's Report, Findings and Decision at 1.) Rather, based upon a search of public tax records of which the Board took judicial notice, the Board found that the property was owned by Clarence Nixon, Charles Nixon and the Estate of Harriett Nixon. (Board's Report, Findings and Decision at 1; Board's Findings of Fact, No. 6.) The Board also found that contained within the "Nixon property" was a separate 2.75–acre tax parcel, owned by

1. A conditional use is nothing more than a special exception which falls within the jurisdiction of the municipal governing body (here, the Board) rather than the zoning hearing board. *See Bailey v. Upper Southampton Township*, 690 A.2d 1324 (Pa.Cmwlth.1997); *see also* section 913.2 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by section 93 of the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10913.2. Here, the Board, as the governing body of the Township, has authority to permit conditional uses according to standards and criteria set forth in zoning ordinances enacted by the Board to regulate land use. *See Bailey;* MPC § 913.2, 53 P.S. § 10913.2.

2. Act of December 19, 1974, P.L. 973, *as amended*, 72 P.S. § 5490.1–5490.13.

3. *See* section 8 of the Farmland Act, 72 P.S. § 5490.8.

4. Section 107 of the MPC defines a landowner as:

 [T]he legal or beneficial owner or owners of land including the holder of an option or contract to purchase (whether or not such option or contract is subject to any condition), a lessee if he is authorized under the lease to exercise the rights of the landowner, or other person having a proprietary interest in land.

 53 P.S. § 10107. An agreement for a future interest in the subject property is insufficient to confer standing as a landowner. *Coolbaugh Township.* Here, Applicant does not argue that it has standing; rather Applicant argues that the Board has waived the issue of standing and that the Board was precluded from *sua sponte* raising the issue of standing.

Raymond Bishop, Stanley Bishop, Charles H. Nixon and Clarence B. Nixon, Jr. (Board's Findings of Fact, No. 6.)

At the hearings before the Board, Applicant had presented a contractual consent form executed by only one of the owners of the property—the Estate of Harriet H. Nixon by Clarence B. Nixon, Jr., in his capacity as Executor. (Board's Findings of Fact, Nos. 10, 11.) The Board found that four of the five record owners of the property (Charles H. Nixon; Clarence B. Nixon, Jr., in his individual capacity; and the Bishops) were not parties to the application or the hearings before the Board and did not acknowledge in any way that they were in agreement with the application for a change in the property's use. (Board's Findings of Fact, Nos. 6, 11.) The Board also took notice of an equity suit filed by Applicant against Charles H. Nixon, Clarence B. Nixon, Jr. and Harriet Nixon Hall, wherein the defendants in that suit denied the existence of any agreement permitting Applicant the right to either purchase or conduct surface mining activities on the property. (Board's Findings of Fact, No. 12.) Because the Board found that Applicant filed its application without the consent of the landowners, the Board concluded that Applicant lacked standing. (Board's Findings of Fact, No. 13.)

Applicant appealed the Board's denial of Applicant's conditional use application to the trial court.[5] In that appeal, Applicant claimed that, at the time of the hearing before the Board, Applicant had standing because it had "an equitable interest in the development of surface mining rights in [sic] NIXON PROPERTY, as evidenced by a fully executed Contractual Consent of Landowner."[6] (Land Use Appeal at ¶ 5, R.R. 375a.)

The Board filed a motion to quash Applicant's appeal to the trial court based on the Board's decision that Applicant lacked standing. (R.R. 434a.) In that motion, the Board pointed out that, if the trial court agreed with the Board's decision that Applicant lacked standing, the trial court would not need to address the numerous other legal and factual issues raised in Applicant's land use appeal. (R.R. 435a.) In response, Applicant moved to strike the Board's brief on the ground that it improperly relied on extraneous evidence of Applicant's lack of standing from a separate but related case before the Collier Township Zoning Hearing Board.[7] (R.R. 483a–85a.) Both motions were fully briefed by the parties. (R.R. 440a–50a; R.R. 453a–70a; R.R. 490a–94a; 496a–501a.)

By decision of November 18, 1998, the trial court affirmed the Board's decision denying Applicant's conditional use application for lack of standing. (Trial court op. at 4.) Relying on section 107 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10107,[8] the trial court

---

5. Applicant's land use appeal was filed pursuant to section 1002–A of the MPC, added by section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11002–A.

6. Applicant also contended that it had standing because, subsequent to the Board's decision, it acquired a "Right of First Refusal" for purchase of the Nixon property signed by all record owners expressly giving Applicant "the *immediate* right to exercise uncontested status of 'landowner' as defined by 53 P.S. § 10107 in relation to the entire NIXON PROPERTY." (Land Use Appeal at ¶ 6, R.R. 375a.) (Emphasis in original.) Applicant does not rely on this document on appeal to the Commonwealth Court.

7. In the Zoning Hearing Board proceeding, Applicant had lodged a validity challenge and had argued that it had standing based upon a Right of First Refusal granted to it by the Nixons in settlement of a civil equity action before the common pleas court. In that proceeding, the Zoning Hearing Board dismissed Applicant's validity challenge, finding that, as a matter of law, a Right of First Refusal was insufficient to confer standing. (Trial court op. at 3.) At the time the trial court rendered its opinion, that case was on appeal to the court of common pleas. (Trial court op. at 3.)

8. See n. 5, *supra*.

explained that "[i]t is beyond dispute that no interest in land can be conveyed without the consent of all owners." (Trial court op. at 2.) Therefore, the trial court found that the contractual consent form signed by only one of the five record owners was insufficient to confer standing on Applicant. (Trial court op. at 2.)

 On appeal to this court,[9] Applicant claims that the trial court erred in several respects when it affirmed the Board's decision that Applicant lacked standing. First, Applicant contends in tortuous legal reasoning that, because the trial court did not rule on the Board's motion to quash, the motion must be deemed denied, which, by implication, means that the trial court found that Applicant had standing. We disagree.

The trial court's decision simultaneously disposed of both parties' motions. First, it denied Applicant's motion to strike the Board's brief, explaining that, although the Zoning Hearing Board proceeding was extraneous, the proper course was not to strike the Board's brief but to ignore the extraneous information and decide the case solely with reference to the evidence before the Board. (See Trial court op. at 3.) Then the trial court ruled on the Board's Motion to Quash Applicant's appeal for lack of standing. Although in its decision the trial court did not specifically state that it was ruling on the Board's motion to quash, the trial court's decision unquestionably acknowledged, and ruled on, that motion to quash. (See trial court op. at 1.) The result of the trial court's

decision was to decide the issue of standing based solely on the evidence before the Board in the conditional use proceeding, without addressing the many substantive issues raised in Applicant's land use appeal. (Trial court op. at 4). That was precisely the relief requested by the Board in its motion to quash. In deciding the issue of Applicant's standing based solely on the record before the Board, the trial court did not decide the case on the merits and did not impliedly find that Applicant had standing.

 Applicant next argues that the trial court erred in affirming the Board's decision on standing where the Board raised the issue of standing *sua sponte*. Because standing may be waived when not raised before the hearing board,[10] Applicant argues that the Board erred in questioning Applicant's standing. Again, we disagree. Here, although the Board sat as the tribunal hearing the conditional use application, the Board, as the municipal governing body, had an additional interest in the proceeding – i.e. to see that its zoning ordinance was not violated.[11] Thus, the Board raised the issue of Applicant's standing not as an adjudicator, but in its capacity as the municipal governing body. Moreover, a reading of the record makes clear that Applicant was not blind-sided by the Board's action or lulled into believing that its standing was not at issue. Rather, the record indicates unequivocally that Applicant's standing was an issue for the Board during the hearings before it.[12]

9. Where, as here, the trial court takes no additional evidence, our scope of review in a zoning appeal is limited to a determination of whether the board of supervisors committed an abuse of discretion or an error of law. An abuse of discretion is established where the findings are not supported by substantial evidence. *Valley View Civic Ass'n. v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 *(1983)*. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bailey.*

10. *See, e.g., Friedlander v. Zoning Hearing Board*, 119 Pa.Cmwlth. 164, 546 A.2d 755 (1988).

11. We have recognized that administrative agencies are sometimes not only tribunals, but also participants in the litigation. *See McCann v. Unemployment Compensation Board of Review*, 723 A.2d 246 (Pa.Cmwlth. 1998), *(as amended* to correct typographical errors Jan. 5, 1999).

12. At the hearing, Applicant's landscape architect, Steven Victor, testified that Applicant

■ Finally, Applicant claims that the Board's decision that Applicant lacked standing deprived Applicant of due process in that Applicant had no opportunity to show its standing. We disagree. Applicant's due process was amply protected by the procedure set out in section 1005–A of the MPC, 53 P.S. § 11005–A, which permits a party, by motion, to request the trial court to receive additional evidence or remand the case to the board for receipt of additional evidence. In applying section 1005–A, we have held that the trial court **must** receive additional evidence in a zoning case where the movant demonstrates that the record is incomplete as a result of the movant's having been denied an opportunity to be fully heard. *Eastern Consolidation and Distribution Services, Inc. v. Board of Commissioners,* 701 A.2d 621 (Pa.Cmwlth.1997), *appeal denied,* 553 Pa. 683, 717 A.2d 535 (1998). Here, Applicant failed to follow the statutorily delineated procedure to supplement the record on the issue of its standing.

For the foregoing reasons, we affirm the decision of the trial court.

### O R D E R

AND NOW, this 6th day of August, 1999, the order of the Court of Common Pleas of Allegheny County, dated November 18, 1998, is hereby affirmed.

currently had an agreement to purchase the property and that Applicant's application was based upon that agreement. (R.R. 128a.) However, upon cross-examination by the Township solicitor, Pat McShane, an executive of Applicant, admitted that the referenced agreement was not an agreement to purchase but a "Contractual Consent of Landowner," which merely stated that Applicant "HAS THE RIGHT TO ENTER UPON AND USE THE LAND FOR THE PURPOSES OF CONDUCTING SURFACE MINING ACTIVITIES." (R.R. 389a.) (Emphasis in original.) Further cross-examination educed that the "contractual consent" agreement was limited to only "58+ acres." Indeed, Applicant admitted that it did not have any agreement with respect to the additional approximately 274 acres of the Nixon property. (R.R. 160a.) Applicant also admitted, pursuant to cross-examination by the Township solicitor, of the existence of a then pending lawsuit between the Nixons and Applicant, wherein the Nixons denied the existence of any agreement that would permit Applicant to either purchase the property or conduct surface mining activities on it. (R.R. 162a–63a.) The Township solicitor also inquired into that portion of the property purportedly owned by the Bishops. (R.R. 159a–60a.)