ONE MERIDIAN PARTNERS, LLP

v.

ZONING BOARD OF ADJUSTMENT OF CITY OF PHILADELPHIA, City of Philadelphia and Mariner Commercial Properties, Inc.

Appeal of: Mariner Commercial Properties, Inc.

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 2004.

Decided Feb. 1, 2005.

Carl S. Primavera, Philadelphia, for appellant.

Michael Sklaroff, Philadelphia, for appellee.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, J., and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

Mariner Commercial Properties, Inc. (Mariner) appeals from the order of the Court of Common Pleas, which reversed the decision of the Zoning Board of Adjustment of the City of Philadelphia (Zoning Board) granting the requested special use permit, certificate and variances for Mariner. We affirm.

This appeal arises out of an application by Mariner to construct a 50–story, luxury high-rise condominium tower at the intersection of 15th and Chestnut Streets in the City of Philadelphia. Mariner applied to the Philadelphia Department of Licenses and Inspections for a permit to begin construction. The application was refused because the proposal was not in compliance with the Philadelphia Zoning Code with respect to the height, floor area ratio (FAR), lot coverage, curb cut width, and required accessory parking. In addition, a certificate was required for a proposed restaurant and a special use permit was required for the parking garage.

Mariner appealed the refusal to the Zoning Board. The Zoning Board granted Mariner the requested variances,[1] certificate, and special use permit on January 10, 2003. One Meridian Partners (Appellee) was the sole protestant at the Zoning Board hearings and is the owner of the adjoining property. Appellee appealed the decision of the Zoning Board to the Court of Common Pleas of Philadelphia. The matter was heard on appeal before the Honorable Matthew D. Carrafiello. On April 1, 2004, Judge Carrafiello reversed the Zoning Board and Appellant appealed to this Court.

■ In reviewing this matter, where the Court of Common Pleas has taken no additional evidence, this Court's standard

---

1. In order to be granted a variance from the applicable zoning ordinance, the applicant must show that it would suffer unnecessary hardship if required to comply with the ordinance and that the proposed use will not be contrary to the public interest. In *Hertzberg v. Zoning Board of Adjustment*, 554 Pa. 249, 721 A.2d 43 (1998), our Supreme Court set forth the following standard for determining if hardship exists in a case where the landowner requests a dimensional variance:

courts may consider multiple factors, including the economic detriment to the applicant if the variance is denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the neighborhood.

*Id.*, 554 Pa. at 264, 721 A.2d at 50.

of review is identical to that of the Court of Common Pleas and is limited to determining whether the Zoning Board abused its discretion or committed an error of law in granting the variances. *Collier Stone Company v. Township of Collier Board of Commissioners*, 735 A.2d 768 (Pa.Cmwlth. 1999). An abuse of discretion is established where the findings are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

■ The pertinent factual findings are as follows. Mariner seeks to build a 50 story, 615–foot building that would include a restaurant/bar and retail space on the first floor, a parking garage for 338 cars on floors 2–11, 428 residential condominiums on floors 12–48, a pool, fitness center, and offices on floor 49, and mechanical facilities on floor 50. The property sits diagonally across from City Hall. The variances and permit sought were initially refused by the Philadelphia Department of Licenses and Inspection. The zoning refusal was issued for the following reasons:

1) 70% of lot coverage above the 65 foot elevation point, where the Code allows only 50% (Philadelphia Zoning Code Section 14–305(4)(g)(.1);

2) 809,400 square feet of gross floor area, which is a floor area ratio (FAR) of 36 times the area of the site, a 300% increase over what the code permits which is 269,000 square feet (Philadelphia Zoning Code Section 14–305(8)(a)(.2);

3) A building height of 615 feet, where the code permits only a maximum of 521 feet (Philadelphia Zoning Code Section 14–1609);

4) A curb cut width of 68 feet, where the Code permits only 30 feet;

5) None of the 338 parking spaces are specifically dedicated to the residents of the building;

6) The number of parking spaces for compact cars, 101, exceeds the maximum allowable which is 84;

7) No retail frontage on Ranstead Street;

8) Providing two loading areas instead of three;

9) The minimum dimensions of the loading areas are not met.

The Zoning Board reversed the Philadelphia Department of Licenses and Inspections and granted the variances, permit, and certificate requested. The Honorable Matthew D. Carrafiello reversed the Zoning Board, concluding that some of the Zoning Board's "Findings of Fact" and "Conclusions of Law" were not supported by substantial evidence. Specifically, Judge Carrafiello found that there was not substantial evidence to support the finding that the subject land was unique.[2] Judge Carrafiello cited Mariner's own architect, David Ertz, who admitted that the topography of the site was flat and that there were no site conditions that were problematic. Moreover, Judge Carrafiello concluded that the Zoning Board's finding "that the grant of the Certificate will not impair an adequate supply of light and air to the adjacent property" was not supported by substantial evidence. He concluded that the height of the building raised concerns because City Council has addressed this concern in providing for additional special height controls in or-

**2.** The Zoning Board found that because of the peculiar physical surroundings, shape and topographical conditions of the specific structure proposed and the land on which it will be built, that literal enforcement of the Zoning Code will result in unnecessary hardship.

der to protect Center City's skyline.[3] Additionally, Judge Carrafiello concluded that the Zoning Board's reliance upon Mariner's Traffic Study Report was misplaced. The rationale being that "the Traffic Impact Study did not address the overall project, but addressed only those traffic concerns as related to the construction of the garage." Judge Carrafiello relied on testimony from Adrienne Eiss, Mariner's traffic expert, to come to this conclusion. Finally, Judge Carrafiello concluded that the record revealed no hardship even under the more relaxed *Hertzberg* standard. Mariner appealed to this Court.

Mariner's principal argument is that *Hertzberg* is applicable in the present case and was properly relied upon by the Zoning Board in granting variances and other relief to Mariner. However, in the *Hertzberg* decision the Court recognized and distinguished *O'Neill v. Zoning Board of Adjustment,* 434 Pa. 331, 254 A.2d 12 (1969). The *O'Neill* case is directly on point with the matter at hand. Our Supreme Court stated in *Hertzberg:*

> In *O'Neill,* this Court refused to uphold the grant of variances to an applicant who wished to construct a twenty-six story apartment building consisting of 225,809 square feet of floor space. . . . The property was located in a C–3 commercial district which permitted the construction of apartment buildings but limited the allowable floor space to 86,646 square feet. . . . This Court found that *O'Neill* was not the appropriate case to apply a less strict standard for the grant of a dimensional variance because the **"apartment building would be more than a mere technical and superficial deviation from the space requirements. The building would contain approximately two and one**

**half times as much floor space as is now permitted under the zoning regulation. In such a situation, petitioner's remedy would appear to be a rezoning and not a variance."** *O'Neill,* 434 Pa. at 338, 254 A.2d at 16.

> The present case is different from *O'Neill* in that Miryam's is not attempting to add more space than permitted by the zoning ordinance, but rather seeks to make do with the size of the building as is, which is smaller than the zoning requirements. Thus, the case sub judice is one in which "a mere technical and superficial deviation from space requirements" is sought.

554 Pa. at 258, 721 A.2d at 47 n. 7 (emphasis added).

*O'Neill* is directly on point. The present variance is even greater than the one sought in the *O'Neill* case. This variance calls for three times the amount of floor space, while *O'Neill* sought two and one half times the floor space. Certainly, a 300% increase in FAR is not "a mere technical and superficial deviation from the space requirements." *O'Neill,* 434 Pa. at 338, 254 A.2d at 16.

In *O'Neill,* the applicant argued that the apartments' rents would be too expensive if he were constrained to build within the zoning ordinance because he would not be able to build enough apartments. Mariner's own testimony attempts to make a similar argument. Mr. Ertz, Mariner's architect, stated on cross-examination that a building could be built within the constraints of the 12 FAR requirement in the Zoning Code, but because of the need for the required amenities, only a few floors would be condominiums. He stated that in such a situation the units would never sell due to high condominium fees. Mr. Mahoney testified on behalf of Mariner that he

---

**3.** Section 14–1609 of the Philadelphia Zoning Code (as amended June 1, 1998).

believed a certain critical mass was necessary to make a luxury residential use work at the site. The Zoning Board concluded that the FAR variance was necessary due to the fact that the retail spaces, parking, and mechanical areas took up a substantial portion of the allowable FAR. The Board also concluded that a building built strictly according to the Code would not be feasible due to the high condominium fees that would result. However, this conclusion is contrary to the ruling in *O'Neill.* Thus, it appears that Mariner's appropriate remedy would be a rezoning as was the holding in *O'Neill.*

In *Yeager v. Zoning Hearing Board of the City of Allentown,* 779 A.2d 595, 598 (Pa.Cmwlth.2001), this Court stated and reiterates once again:

> Ever since our Supreme Court decided *Hertzberg,* we have seen a pattern of cases arguing that a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property *exactly as he wishes,* so long as the use itself is permitted. *Hertzberg* stands for nothing of the kind. *Hertzberg* articulated the principle that unreasonable economic burden may be considered in determining the presence of economic hardship. It may also have somewhat relaxed the *degree* of hardship that will justify a dimensional variance. However, it did not alter the principle that a substantial burden must attend *all* dimensionally compliant uses of the property, not just the particular use the owner chooses. This well-established principle, unchanged by *Hertzberg,* bears emphasizing in the present case. A variance, whether labeled dimensional or use, is appropriate "only where the property, not the person, is subject to hardship." *Szmigiel v. Kranker,* 6 Pa.Cmwlth. 632, 298 A.2d 629, 631 (1972).

Additionally, this Court agrees with Judge Carrafiello in his analysis of the importance of protecting Philadelphia's Center City skyline. City Council has enacted legislation for a reason. The protection and enhancement of the high quality of the City's skyline is in the best interest of the City of Philadelphia. Philadelphia Zoning Code § 14–1609(1)(a)(as amended June 1, 1998)

Legislation mandating height limits around City Hall ensures that the inspiring view of William Penn can be cherished and enjoyed by more than the adjacent neighbors to City Hall. Under Mariner's proposal, City Hall would become a secondary building and eventually become nestled between giant-size buildings if variances like the one proposed were granted. The interest of the City is a bona fide exercise of the City zoning power and this Court believes that the wisdom of such policy making is for the City Council to decide. In the present case, Mariner has proven nothing more than adherence to the ordinance imposes a burden on Mariner's desire to build a 50 story, luxury, high-rise, condominium on the premises. Mariner has spent a significant amount of money on the premises. However as noted in *Society Created to Reduce Urban Blight v. Zoning Board of Adjustment,* 771 A.2d 874, 878 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 567 Pa. 733, 786 A.2d 992 (2001):

> while *Hertzberg* eased the requirements ... it did not make dimensional requirements ... "free-fire zones" for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially "hurt" if it could not do what it wanted to do with the property....If that were the case, dimensional requirements would be meaningless—at best,

rules of thumb—and the planning efforts that local governments go through in setting them to have light, area, and density buffers would be a waste of time.

Therefore, we affirm.

## *ORDER*

AND NOW, this 1st day of February 2005, the order of the Court of Common Pleas of Philadelphia in the above captioned matter is affirmed.