IN THE COMMONWEALTH COURT OF PENNSYLVANIA

QSP Development, LLC and        :
Miners Lofts Senior Housing I LP,   :
                Appellants   :
                             :
           v.              :     No.  970 C.D. 2020
                             :     Submitted:  May 16, 2022
Schuylkill County Zoning Hearing  :
Board, Michael A. Kroznuskie and  :
Denise Kroznuskie            :


BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE STACY WALLACE, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                  FILED:  July 19, 2022


      Appellants QSP Development, LLC and Miners Lofts Senior Housing I, LP (collectively, Appellants) appeal from an order of the Schuylkill County Court of Common Pleas (trial court) that affirmed the Schuylkill County Zoning Hearing Board's (ZHB) decision to grant a series of dimensional variances to Appellees Michael and Denise Kroznuskie (collectively, Kroznuskies).[1]  The Kroznuskies sought variances from the Schuylkill County, Pennsylvania Zoning Ordinance (Ordinance) (2010) to facilitate construction of an outdoor seating area for their restaurant, Yocko's Sports Bar and Restaurant (Yocko's).  Appellants, who intend

---

[1] Though they remain parties to the case, this Court has precluded the Kroznuskies from participating in this appeal for failure to file a brief in this Court.  *See* Order of June 16, 2021, Cmwlth. Ct. Docket No. 970 C.D. 2020.

to operate a senior housing facility across the street from Yocko's, opposed the variance requests based on noise and parking concerns. On appeal, Appellants contend the trial court erred in taking judicial notice of restrictions on indoor dining capacity relating to COVID-19 to establish the "unnecessary hardship" required to support the grant of a variance.[2] Appellants also argue the ZHB lacked jurisdiction to combine two lots involved in the proposed construction. After careful review, we vacate the trial court's order and remand consistent with this opinion.

## I. BACKGROUND

Yocko's is a bar and restaurant in downtown Minersville, Pennsylvania. Under various names and owners, the restaurant has been in operation since 1940. Reproduced Record (R.R.) at 30a.[3] The Kroznuskies purchased Yocko's from Michael Kroznuskie's father in 2007 and have operated it continuously since. R.R. at 37a. Yocko's is located in a C-1 Local Commercial zoning district. R.R. at 12a. Under the Ordinance, the purpose of a C-1 district is as follows:

> To provide for a mix of housing and light business uses in a manner that avoids conflict between homes and intensive commercial uses. To primarily provide for smaller-scale uses that will not be obtrusive in the landscape and that will not overload the road system.

Ordinance § 301.D.7.[4] As this description indicates, both residential and commercial land use is acceptable in a C-1 district, with different requirements and obligations attending each.

---

[2] *See* Section 910.2 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

[3] We have removed all leading zeros from references to Appellants' Reproduced Record (R.R.) in this opinion.

[4] Pursuant to 42 Pa.C.S. § 6107(a)-(b), we are required to take judicial notice of local ordinances and may do so "in such manner as [we] . . . deem proper[.]" In preparing this opinion, we have

In 2017, the Kroznuskies purchased the parcel adjacent to Yocko's (Adjacent Parcel) with the intent of constructing an outdoor dining area for the restaurant. They demolished a residential structure on the Adjacent Parcel for this purpose, leaving the lot vacant. The parcel on which Yocko's is located (Main Parcel) and the Adjacent Parcel are both relatively small: the Main Parcel has a total area of 2,139 square feet (sq. ft.), while the Adjacent Parcel has a total area of 1,286 sq. ft. ZHB Decision at 3, ¶¶ 15-16.[5] These dimensions are inconsistent with the minimum lot area prescribed by the Ordinance. In a C-1 district, the Ordinance dictates a minimum lot size of 5,000 sq. ft. for all non-residential uses. Ordinance § 306.I.3.a. Additionally, because Yocko's covers the entire area of the Main Parcel, the Main Parcel is out of compliance with the Ordinance's maximum building coverage ceiling of 75%. Ordinance § 306.I.3.g.

On May 31, 2019, the Kroznuskies filed an application for a hearing before the ZHB, requesting consolidation of the Main Parcel and the Adjacent Parcel as well as variances from the Ordinance's requirements pertaining to maximum building coverage and parking capacity. R.R. at 5a; *see also* Ordinance §§ 601.B.2.b, 306.I.3.g. The Kroznuskies did not seek relief from the minimum lot area

---

relied upon an online copy of the Ordinance, accessible on the County's website. *See Schuylkill Cnty. Planning & Zoning Comm'n*, http://co.schuylkill.pa.us/Offices/PlanningZoning/PlanningZoning.asp (last accessed July 18, 2022). We turn our attention to Schuylkill County's Ordinance because the Borough of Minersville has not adopted its own. Additionally, for the same reasons and under the same statutory authority, we take judicial notice of the Schuylkill County Subdivision and Land Development Ordinance (SALDO), which is available through the same online source.

[5] Presumably pursuant to Pa. R.A.P. 2111(b), Appellants included copies of the ZHB and trial court's decisions as attachments to their opening brief. *See* Appendixes I & II to Appellants' Br. The decisions, however, are not contained in the R.R. *See* R.R. at 3a-4a (referring to brief exhibits). Therefore, we refer to them as independent documents with reference to their internal pagination.

requirement. Initially, their plan consisted of a 727 square-foot outdoor patio and an addition to the Yocko's kitchen that stretched into the Adjacent Parcel. Original Record (O.R.), Item No. 3, Exhibits to ZHB Record, 6/13/19 Sketch Plan Prepared by Diane Lenick (Initial Sketch Plan).

The ZHB held the first of three hearings on the Kroznuskies' application on August 1, 2019. At this hearing, Michael Kroznuskie testified he sought to install the outdoor patio to provide more options for his customers, many of whom had expressed an interest in sitting outside. R.R. at 22a. The planned kitchen addition was intended to increase Yocko's serving capacity to account for the additional patrons dining on the patio. Regarding parking, Mr. Kroznuskie explained he had an oral lease to use a parking lot associated with a doctor's office located on the same block, and that he felt confident any additional patrons drawn by the option of outdoor dining could park there. R.R. at 14a-17a, 29a.

Craig Shields testified on behalf of Appellants in opposition to the project. He explained Appellants were in the process of converting the building across the street from Yocko's into a senior housing facility and outpatient elder-care center affiliated with Geisinger Health System (Senior Center). The housing portion of the Senior Center consists of 30 units, 9 of which will feature large windows facing Yocko's. R.R. at 94a. Mr. Shields indicated Appellants were concerned that noise emanating from the proposed Yocko's patio would disturb elderly residents. Mr. Shields also expressed concern about increased traffic overwhelming area parking resources, though he admitted Appellants had secured private parking sufficient to meet the needs of the Senior Center. R.R. at 65a, 71a.

On October 3, 2019, the ZHB convened for a second hearing on the Kroznuskies' request. By that time, the Kroznuskies had revised their expansion

4

plans such that they felt variance relief was no longer necessary. R.R. at 145a. Specifically, they decided to decrease the size of the patio by 100 sq. ft. and forego the kitchen addition altogether. This purportedly obviated the need for relief from Section 306.I.3.g of the Ordinance, which provides for 75% maximum building coverage in C-1 districts.[6] The Kroznuskies also contended the smaller patio brought Yocko's into compliance with the Ordinance's parking provisions. In particular, the smaller patio would seat 12 patrons, which brought the restaurant's total seating capacity to 92. R.R. at 147a. Pursuant to the Ordinance's parking formula, Yocko's needed one parking space for every four customers, plus one space for every employee. *See* Ordinance § 601, Table 6.1. Mr. Kroznuskie testified he has six employees, which brought the total number of required parking spaces to 29. R.R. at 147a. To prove the required capacity, the Kroznuskies submitted a letter from the doctor's office down the street attesting to an agreement to allow Yocko's customers to park in a nearby lot of 30 spaces. ZHB Decision at 7, ¶ 35.

The Kroznuskies also presented the testimony of Richard Clink, a patrolman with the Minersville Borough Police Department. Clink testified that Yocko's has no history of noise complaints or other disorderly behavior one might typically associate with a bar. Clink also related that the Minersville police station is "right across the street" from Yocko's. R.R. at 133a. Appellants' part owner, Noble

---

[6] This argument assumed that the Main Parcel and Adjacent Parcel would be combined. That is, the Kroznuskies' architect calculated the percent lot coverage under the revised plan by combining the total area of both parcels and treating them as one. *See* Original Record (O.R.), Item No. 3, Exhibits to ZHB Record, 8/8/19 Sketch Plan Prepared by Gary Hitzemann (Revised Sketch Plan). The combined total area of the two parcels is 3,551 sq. ft. The area of the Yocko's restaurant building is 2,139 sq. ft., which results in an overall lot coverage of 60.2%. The area of the patio and other ancillary improvements on the Adjacent Parcel do not count toward the overall lot coverage because the Ordinance defines "building coverage" as "all buildings that are under a roof." Ordinance § 202.

Quandel, testified he remained concerned with potential noise, despite Patrolman Clink's testimony and assurances from Mr. Kroznuskie that he would accept a 10:00pm curfew for use of the outdoor patio. Mr. Quandel said his concern was directed more toward the possibility that, at some point in the future, the Kroznuskies could sell Yocko's to a less conscientious owner who might operate the bar differently. R.R. at 161a.

The ZHB convened one last time on November 7, 2019 to announce its decision. The ZHB granted the Kroznuskies' request and issued a written decision the following day (ZHB Decision). After summarizing the relevant testimony and evidence, the ZHB held the Kroznuskies had satisfied the Ordinance with respect to maximum building coverage and parking space, making variance relief unnecessary on these issues. ZHB Decision at 7, ¶¶ 34-5. The ZHB also held that a variance from the Ordinance's rear-yard setback requirement would be justified, "if . . . [such] relief . . . is required[.]" *Id.* at 7, ¶ 37; *see also* Ordinance § 306.I.3.d (requiring 15-foot rear-yard setback for all uses in C-1 districts). In reaching this conclusion, the ZHB noted that the Initial Sketch Plan called for a four-foot setback from the "North Delaware Ave. rear" of the Adjacent Parcel. ZHB Decision at 7, ¶ 37; O.R. Item No. 3, Initial Sketch Plan. In similarly guarded language, the ZHB held that a variance from the Ordinance's minimum lot size from 5,000 to 3,551 sq. ft. would be *de minimis*, but only "if" such relief is necessary. ZHB Decision at 7, ¶ 37. The ZHB went on to conclude that the Kroznuskies would face "unnecessary hardship" if they were prevented from developing the Adjacent Parcel according to their plans. ZHB Decision at 9, ¶ 45. The ZHB noted that, due to the Adjacent Parcel's relatively small total area, engaging in **any** of the uses permitted by the Ordinance in a C-1 district would require variance relief. Thus, because the "lot's existing dimensions"

6

prevented the Kroznuskies from conducting "any meaningful reconstruction" without zoning relief, the ZHB granted variances. ZHB Decision at 9, ¶ 42.

Appellants then filed an appeal with the trial court. On September 2, 2020, without taking any additional evidence or testimony, the trial court issued a decision affirming the ZHB, albeit with a few additional requirements for the Kroznuskies. To bring the Yocko's expansion into strict compliance with the Ordinance's parking provisions, the trial court ordered the Kroznuskies to enter into a written lease with the doctor's office for use of the nearby parking lot, and to post signage on that lot and at Yocko's to direct customers to the lot. *See* Ordinance §§ 602.E.1, 603.B.3. Additionally, in recognition of the fact that the ZHB lacked the authority to combine the Main Parcel and the Adjacent Parcel, the trial court directed the Kroznuskies to submit an annexation plan to the Schuylkill County Planning Commission (Planning Commission) for this purpose. *See* Schuylkill County Subdivision and Land Development Ordinance (SALDO), § 402.E (providing Planning Commission with authority to "approve, conditionally approve or disapprove" annexation plans).

On the merits of the ZHB's grant of variance relief, the trial court focused primarily on whether the Kroznuskies had established the "unnecessary hardship" required to support a variance. *See* Section 910.2 of the MPC, 53 P.S. § 10910.2(a) (providing for variance relief where, *inter alia*, "it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant"). To show an unnecessary hardship, the court took judicial notice of "the current Orders of the Commonwealth of Pennsylvania that all indoor restaurants in the Commonwealth may operate at only 25% of its [sic] current indoor seating capacity in order to prevent the spread of the Wuhan flu, COVID-19[.]" Trial Ct. Decision at 2-3, ¶ 2. Aside from this general description of the public health directives relating to the

7

COVID-19 pandemic, the trial court did not cite any particular order. The trial court also failed to make findings as to how indoor dining restrictions affected Yocko's business specifically, choosing instead to assume Yocko's was suffering the generalized "plight of a restaurant with no current outdoor seating capacity." Trial Ct. Decision at 3, ¶ 2. The court did, however, go on to affirm the ZHB's findings that the variances granted were *de minimis* and would have no appreciable adverse effect on the neighborhood or Appellants.

Appellants appeal to this Court.

## II. SCOPE AND STANDARD OF REVIEW

In a case like the present one where the trial court reviewed the ZHB's Decision without supplementing the record, our scope of review is the same as the trial court: we are "limited to determining whether the Zoning Board abused its discretion or committed an error of law in granting the variances." *One Meridian Partners, LLP v. Zoning Bd. of Adjustment*, 867 A.2d 706, 708 (Pa. Cmwlth. 2005) (citation omitted). Whether to grant a variance, and whether unnecessary hardship exists to support it, are both matters committed to the ZHB's discretion. *Marshall v. City of Phila.*, 97 A.3d 323, 333 (Pa. 2014). The ZHB abuses its discretion if it reaches a "manifestly unreasonable" result or makes factual findings that are not supported by substantial evidence. *Metal Green, Inc. v. City of Phila.*, 266 A.3d 495, 513 (Pa. 2021) (citation omitted). "Substantial evidence" is defined as "relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

We review the trial court's evidentiary rulings, including whether to take judicial notice pursuant to Pa.R.E. 201, for abuse of discretion. *Lock v. City of Phila.*, 895 A.2d 660, 665 (Pa. Cmwlth. 2006).

8

### III.   ISSUES PRESENTED

Appellants have properly preserved two issues for this Court's review:

1) Whether the trial court erred in taking judicial notice of restrictions on indoor dining stemming from COVID-19, as well as the purported effect of those restrictions on the business of Yocko's; and

2) Whether the trial court improperly countenanced the ZHB's *ultra vires* decision to annex the Main Parcel and the Adjacent Parcel.

All other issues argued in Appellants' brief are waived.[7, 8]  We address Appellants' preserved issues in reverse order.

### IV.   DISCUSSION

### A. The trial court did not approve an unlawful annexation by the ZHB.

Appellants argue the ZHB "committed an abuse of discretion and error of law by assuming it had the power to approve" annexation of the Main Parcel and the

---

[7] On October 26, 2020, Appellants filed their concise statement of errors complained of on appeal (Statement) pursuant to Pa. R.A.P. 1925(b).  Appellants identified three issues in the Statement, including the two listed above.  *See* O.R. Item No. 9, 10/26/20 Statement of Errors Complained of On Appeal.  Though Appellants' brief to this Court contains numerous arguments addressing the merits of the ZHB's decision to grant variance relief, those arguments are waived for failure to include them in the Statement.  *See* Pa. R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived.").  We reject Appellants' argument that these issues "fall . . . within the scope" of its complaint regarding the trial court taking judicial notice of COVID-19 restrictions.  Appellants' Br. at 18.  Furthermore, the third issue raised in the Statement—whether substantial evidence supports the trial court's finding that Appellants failed to present argument concerning how the Kroznuskies' variances would personally negatively affect them—is waived for failure to develop the issue sufficiently on appeal.  It does not matter that Appellants noted this issue in the section of their brief listing the questions involved on appeal—failing to develop the issue in the argument section results in waiver.  *In re Condemnation ex rel. Cmwlth. Dep't of Transp.*, 76 A.3d 101, 106 n.8 (Pa. Cmwlth. 2013) ("[W]here issues are raised in the statement of questions involved, but not addressed in the argument section of the brief, courts find waiver.") (citation omitted).

[8] Though Appellants expressed concern before the ZHB regarding parking at Yocko's, they have indicated in their brief to this Court they are satisfied with the parking conditions imposed on the Kroznuskies by the trial court.  Appellants' Br. at 18 n.5.

Adjacent Parcel. Appellants' Br. at 15. The ZHB argues this issue is moot because the trial court ordered the Kroznuskies to submit an annexation plan to the Planning Commission, which has "sole jurisdiction over annexation," and because the Commission has already approved such a plan. ZHB Br. at 10-11. In support of this argument, the ZHB has included with its brief a copy of the deed of consolidation combining the two parcels, along with a letter from the Planning Commission purportedly approving the annexation. ZHB Br., App'x I.

We agree with the ZHB that these developments render this issue moot. The doctrine of mootness exists to ensure courts have before them "a real and not hypothetical legal controversy" at all stages of litigation, including on appeal. *Harris v. Rendell*, 982 A.2d 1030, 1035 (Pa. Cmwlth. 2009) (quoting *City of Phila. v. Se. Pa. Transp. Auth. (SEPTA)*, 937 A.2d 1176, 1179 (Pa. Cmwlth. 2007)). Where circumstances change such that a final decision of this Court would have no real effect on relations between the parties, the issue is moot. *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659 (Pa. 2005).

We take judicial notice of the deed of consolidation attached to the ZHB's Brief, as it is a publicly accessible document the authenticity of which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pa. R.E. 201(b)(2); *see also Cmwlth., Hum. Rels. Comm'n v. U.S. Steel Corp., Am. Bridge Div., Shiffler Works*, 311 A.2d 170, 172 (Pa. Cmwlth. 1973) (taking judicial notice of public record filed with Pennsylvania Human Relations Commission).[9] Any concern Appellants may have had about the ZHB's authority to

---

[9] We do not take judicial notice of the letter from the Schuylkill County Planning Commission, as it is unclear whether this document is part of a public record. Conversely, the deed bears a stamp from the Schuylkill County Recorder of Deeds showing it was publicly filed on March 9, 2021. *See* ZHB's Br., App'x I.

order annexation has been obviated by the Planning Commission's subsequent, lawful annexation of the Main Parcel and the Adjacent Parcel. Indeed, Appellants agree that, under SALDO, the Commission has "sole jurisdiction" over the "review and approval" of plans to annex real property. Appellants' Br. at 16; *see also* SALDO § 402.E. Accordingly, we find the issue of the ZHB's jurisdiction to annex the relevant parcels is moot.

**B. The trial court abused its discretion by taking judicial notice of the presumed effect of COVID-19 restrictions relating to indoor dining on the business of Yocko's.**

Under Pennsylvania law, judicial notice is governed by Pa. R.E. 201, which provides that a court may take judicial notice of "fact[s] that [are] not subject to reasonable dispute." Pa. R.E. 201(b). There are two types of such facts: 1) facts which are "generally known within the trial court's territorial jurisdiction," and, as noted above with respect to the deed of consolidation, 2) facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pa. R.E. 201(b)(1)-(2). The practice of judicial notice serves judicial economy by relieving litigants and courts of the obligation to adduce evidence regarding obvious facts. *Wells v. Pittsburgh Bd. of Pub. Educ.*, 374 A.2d 1009, 1011 (Pa. Cmwlth. 1977). "It should not, however, operate to deprive the opposing party of the opportunity to disprove" a fact subject to reasonable dispute. *Id.* (citing *Appeal of Albert*, 92 A.2d 663, 666-67 (Pa. 1952)). In other words, "[d]isputed questions of fact are not within the domain of judicial notice." *HYK Constr. Co., Inc. v. Smithfield Twp.*, 8 A.3d 1009, 1017 (Pa. Cmwlth. 2010) (citation omitted).

Here, the trial court took judicial notice of an undefined set of "Orders of the Commonwealth" restricting indoor dining capacity in response to COVID-19. Trial Ct. Decision at 3, ¶ 2. The court noted these "Orders" changed over time, alternating

11

between completely prohibiting indoor dining and limiting it to 25 and 50% of normal capacity. Based on these "Orders," the court found it beyond dispute that the Kroznuskies were suffering an unnecessary hardship in the absence of an outdoor dining area for Yocko's, dismissing as "preposterous" any argument to the contrary. *Id.*

This finding assumes too much. While this Court and courts across the country took judicial notice of rapidly shifting governmental restrictions during the height of the COVID-19 pandemic,[10] it is quite another matter to presume the effect of those restrictions on a specific restaurant in a specific locality. Our decision in *School District of Philadelphia v. Board of Revision of Taxes*, 217 A.3d 472 (Pa. Cmwlth. 2019), is instructive in this regard. There, the Court of Common Pleas of Philadelphia County took judicial notice of the "fact" that there existed in Philadelphia non-commercial properties whose tax-assessed value, if updated by a current appraisal, would yield more than $7,500 in increased annual revenue to the School District of Philadelphia. *Id.* at 483. This Court held that a fact of this nature—i.e., the fair market value of particular property in a defined geographic area—was subject to reasonable dispute and thus not subject to judicial notice. *Id.* at 484.

Similarly, in the case at hand, even if we assume the trial court's vague reference to "Orders" pertaining to indoor dining suffices to bring the orders

---

[10] *See Allegheny Cnty. v. Cracked Egg, LLC*, (Pa. Cmwlth. No. 101 C.D. 2021, filed July 23, 2021), slip op. at 18, 2021 WL 3124248 at *7 ("The Court can take judicial notice that the mitigation measures directed by the Governor and [the Department of Health] have changed throughout the course of the COVID-19 pandemic.") (referring to mitigation orders on Dep't of Health website); *S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1132 n.1 (9th Cir. 2021) (taking judicial notice of "updated county and state regulations and federal FAA regulations . . . because they are publicly available and neither party disputes their authenticity or accuracy") (referring to regulations posted online).

themselves within judicial notice, the specific impact of the restrictions they embody on the financial situation of Yocko's is still open to debate. Like many restaurants around the Commonwealth, Yocko's may have successfully adapted to the restrictions by offering takeout food and alcohol or by adopting other measures. It may have secured paycheck-protection loans from the government, or had sufficient cash reserves to weather a temporary downturn in business. This Court need not speculate further to illustrate that the trial court abused its discretion in taking judicial notice of these "[d]isputed questions of fact." *HYK Constr.*, 8 A.3d at 1017; *see also Gillespie v. Dep't of Transp., Bureau of Driver Licensing*, 886 A.2d 317, 319 (Pa. Cmwlth. 2005) (trial court abuses its discretion by rendering a "manifestly unreasonable" decision). However, in view of our overall disposition of this appeal, the trial court's error in this regard was harmless. We have given no consideration to the impact of COVID-19 restrictions in assessing the propriety of the variances granted by the ZHB.[11]

## C. The ZHB's grant of variance relief was unnecessary.

As noted, the ZHB granted variances from the Ordinance's minimum lot area and rear-yard setback requirements. *See* ZHB Decision at 7-8, ¶ 37. It reached this result by applying the "dimensional variance" analysis found in *Hertzberg v. Zoning Board of Adjustment of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998), and by concluding the variances were *de minimis* as a matter of law.[12] Our review of the factual record

[11] Because we conclude the trial court erred on this issue, the trial court's purported consideration of COVID-19 restrictions does not alter our standard of review, which is premised on the trial court not taking additional evidence outside the ZHB record. *See One Meridian*, 867 A.2d at 708. Judicially noticed facts can constitute evidence, but only if such notice is "correctly taken[.]" *HYK Constr.*, 8 A.3d at 1017.

[12] "The *de minimis* doctrine authorizes a variance in the absence of a showing of the unnecessary hardship traditionally required to support such relief where the violation is insignificant and the

13

and the text of the Ordinance reveals both these variances were unnecessary for completion of the proposed expansion of Yocko's. Accordingly, the ZHB should not have granted them.

First, the ZHB's grant of rear setback relief was unnecessary because the Kroznuskies' development plans clearly indicate the proposed deck satisfies the Ordinance in this regard. In its decision, the ZHB referred to "Ms. Lenick's survey plan proposing a rear setback relief from 15 feet to 4 feet" as the basis for a variance. ZHB Decision at 7-8, ¶ 37. It is evident that the reference to "Ms. Lenick's survey plan" is a reference to the Initial Sketch Plan, as Mr. Hitzemann prepared the Revised Sketch Plan.[13] The Revised Sketch Plan, upon which the Kroznuskies ultimately sought relief, clearly provides for a 15-foot setback from the rear of the Adjacent Lot that complies with the Ordinance. *See* O.R. Item No. 3, Exhibits to ZHB Record, 8/8/19 Sketch Plan Prepared by Gary Hitzemann.[14] Thus, it was unnecessary for the ZHB to analyze whether a rear-yard setback variance was appropriate. *See* Ordinance § 306.I.3.d.

The ZHB also granted a variance from the Ordinance's minimum lot area requirement. In C-1 districts, the Ordinance sets a minimum lot area of 5,000 sq. ft. for all non-residential uses. Ordinance § 306.I.3.a. The ZHB reasoned that variance

---

public interest is protected by alternate means." *Nettleton v. Zoning Bd. of Adjustment of Pittsburgh*, 828 A.2d 1033, 1038 (Pa. 2003).

[13] *Compare* O.R. Item No. 3, Exhibits to ZHB Record, 6/13/19 Sketch Plan Prepared by Diane Lenick, with O.R. Item No. 3, Exhibits to ZHB Record, 8/8/19 Sketch Plan Prepared by Gary Hitzemann.

[14] As found by the ZHB, the "rear" of this lot is the boundary that abuts a commercial building other than Yocko's and that is opposite from the boundary which faces Lewis Street. ZHB Decision at 3, ¶ 16. The Revised Sketch Plan includes a clearly denominated "15'- 0" setback from this edge of the property.

14

relief was required because the combined total area of the Main Parcel and the Adjacent Parcel is 3,551 sq. ft., which falls short of the 5,000 sq. ft. required by the Ordinance. *See* ZHB Decision at 8, ¶ 37. In reaching this conclusion, the ZHB failed to heed Section 805.C.2 of the Ordinance, which allows for expansion of a "single . . . permitted by right principal use" on a nonconforming lot if the landowner meets certain requirements. Those requirements are:

1) The lot must be a lawful nonconforming lot of record;

2) Minimum setback requirements shall be met, except as provided elsewhere in [the Ordinance];

3) State and federal wetland regulations shall be met; [and]

4) If a septic or well is used, the requirements for such shall be met.

Ordinance § 805.C.2.a.(1)-(4). As a restaurant, Yocko's is a "Permitted by Right" land use in a C-1 district. Ordinance § 306.I.1.tt; *see also* ZHB Decision at 7, ¶ 36 ("A restaurant is a permitted 'By Right' use in a Local Commercial District (C-1)."). Furthermore, it is undisputed that before the Planning Commission annexed the Main Parcel and the Adjacent Parcel, operation of Yocko's was the "principal use" of the Main Parcel. Thus, by proposing the construction of an outdoor deck for the restaurant, the Kroznuskies are merely seeking to "expand" the "permitted by right principal use" of the property, as permitted by Section 805.C.2. The annexation ordered by the Planning Commission merely furthered this objective.[15] Rather than grant a variance from the minimum lot area requirement, the ZHB should have viewed the Kroznuskies' project as an "expansion" of a permitted use on a

---

[15] With an area of 2,139 sq. ft., the Main Parcel was already noncompliant with respect to the minimum lot area requirement. The Planning Commission's annexation actually lessened that nonconformity by creating a combined lot with a total area (3,551 sq. ft.) that is closer to 5,000 sq. ft.

nonconforming lot pursuant to Section 805.C.2. Where a landowners' proposed construction or other activity can be accomplished through lawful means other than a variance, such an alternative remedy is generally preferable. *Cf. Kneebone v. Zoning Hearing Bd. of Plainfield*, __ A.3d __ (Pa. No. 52 MAP 2021, filed Apr. 28, 2022), slip op. at 20 (divided opinion) (Mundy, J., opinion in support of affirmance) (observing that "a variance by nature authorizes actions inconsistent with legislative restrictions on land use").

The record makes clear the proposed construction is permitted on a nonconforming lot. Again, the Main Parcel was already nonconforming and adding the Adjacent Parcel *lessened* the nonconformity. The permitted construction on this nonconforming lot merely continues a single permitted by right principal use. Therefore, we remand to the trial court to further remand to the ZHB for the ZHB to enter an Order permitting the construction to advance subject to the requirements set forth in Section 805.C.2.a.(1)-(4).

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

QSP Development, LLC and : 
Miners Lofts Senior Housing I LP, : 
               Appellants : 
                      : 
             v. :    No.  970 C.D. 2020
                      : 
Schuylkill County Zoning Hearing : 
Board, Michael A. Kroznuskie and : 
Denise Kroznuskie : 

## **O R D E R**

**AND NOW**, this 19th day of July, 2022, in accordance with the rationale stated in the accompanying Memorandum Opinion, the September 2, 2020 Order of the Court of Common Pleas of Schuylkill County (trial court) is hereby **VACATED**. This matter is **REMANDED** to the trial court with instructions to further **REMAND** this matter to the Schuylkill County Zoning Hearing Board to enter an order granting the Kroznuskies' application subject to the requirements set forth in Section 805.C.2.a.(1)-(4) of the Schuylkill County, Pennsylvania Zoning Ordinance (2010).

     Jurisdiction relinquished.

 

_____
STACY WALLACE, Judge